THE DAYTON FOLDING BOX COMPANY, Respondent, v. ABRAHAM DANCIGER, JOHN DANCIGER, MOSES DANCIGER, DANIEL DANCIGER, Co-partners doing business under the name of DANCIGER BROTHERS, RED CHIEF DISTILLING COMPANY and HARVEST KING DISTILLING COMPANY, Appellants.

Kansas City Court of Appeals, December 4, 1911.

1. **CONTRACTS: Sales: Quantum Meruit.** Plaintiff sued on two counts, one for the contract price of a carload of corrugated straw bottle wrappers sold and delivered to defendants and the other on the *quantum meruit*. The defense was that the goods were not up to sample. *Held*, that as the contract provided for goods of a lower quality than the samples, the judgment for plaintiff will not be disturbed.

2. ————: ————: **Pleading.** It is proper to plead the same cause in different forms and in separate counts to meet different possible phases of proof.

3. ————: ————: **Evidence.** Where a document is proper evidence it will be admitted and the opposite party is left to his motion to exclude any irrelevant matter from the consideration of the jury.

4. ————: **Evidence: Cross-Examination.** As the credibility of witnesses is always an issue, it is proper to permit, on cross-examination, inquiry about facts which have a direct bearing on that issue.

Appeal from Jackson Circuit Court.—*Hon. R. B. Middlebrook,* Judge.

AFFIRMED.

*I. J. Ringolsky* and *Sebree, Conrad & Wendorff* for appellants.

(1) The second count in the plaintiff's petition is not a count on *quantum meruit* and a reading of the second count shows that in it the plaintiff charges that it sold and delivered to the defendants a carload of bottle wrappers and pads at and for the price and sum of $4.75 per thousand and that the defendants promised and agreed to pay that price for the pads and that they failed and refused to do so. We claim that the allegations contained in the second count in the plaintiffs' petition charges a count on contract and a count based on the agreement and a count in *assumpsit* for goods sold and delivered and is not a count on a *quantum meruit*. (2) The statements contained in the plaintiffs' letters written to the defendants about shipments it made to other liquor dealers in Kansas City about the same time the shipments were made to the defendants were incompetent and immaterial and self-serving statements. All the objections made by the defendants to same should have been sustained. The error is prejudicial and is always presumed to be so. Blooms Sons' Co. v. Haas, 130 Mo. App. 122; Knaughton v. Gas Light Co., 123 Mo. App. 192. (3) And this is particularly true where the letters were written after the contract was made between the plaintiff and defendants and as was done in the case at bar. Hammond v. Beeson, 112 Mo. 190. (4) A general objection to evidence incompetent for any purpose is sufficient. This is an exception to the general rule, that general objections to the introduction of evidence are insufficient. Bailey v. Kansas City, 189 Mo. 503; State v. Prendible, 165 Mo. 329. Exhibits attached to a deposition offered by party to the suit is a part of the

deposition, as much as the testimony of the witness himself. Crane Co. v. Neel, 104 Mo. App. 177.

*Rosenberger & Reed* and *George H. English, Jr.,* for respondent.

(1) The petition is in the approved form for actions of this kind. It is always proper to state the same cause of action in different forms in order to meet the different phases of the proof. Light & Heat Co. v. Doud, 47 Mo. App. 439; Brinkman v. Hunter, 73 Mo. 172; Gaslight Co. v. City, 86 Mo. 495; Mosely v. Railway, 132 Mo. App. 647. (2) The court properly admitted the entire letter complained of. It was not pretended that the letter was incompetent as a whole. If defendants wished to have its effect limited, they should have asked appropriate instructions. Hitt v. Hitt, 150 Mo. App. 631; Garesche v. College, 76 Mo. 332; Stutter v. Raeder, 149 Mo. 297; Dysart v. Forsythe, 84 Mo. App. 190; Soulard v. Clark, 19 Mo. 510. (3) The objections made at the trial to the introduction of the portion of the letter were insufficient and were properly overruled. Latimer v. Railroad, 126 Mo. App. 70; State v. Pyles, 206 Mo. 626. (4) The cross-examination of defendant in respect to the reasons which moved him to reject the goods was proper. Dempsey v. Lawson, 76 Mo. App. 522; Lee v. Conran, 213 Mo. 404; Bank v. Richards, 119 Mo. App. 18; Council v. Railroad, 123 Mo. App. 432; Franklin v. Railroad, 97 Mo. App. 473. (5) The instructions, considered as a whole, were proper and highly favorable to defendants. Barker v. Publishing Co., 152 Mo. App. 706; Springer v. Indianapolis Brg. Co., 126 Ga. 321; Bag Co. v. McDermott, 85 N. Y. S. 787.

JOHNSON, J.—This is an action to recover the contract price or value of goods sold and delivered by plaintiff to defendants. In the first count of the petition a contract of sale is alleged and the demand

is for the contract price of the goods. The second count pleads a cause of action on *quantum meruit*. The case was here on a former appeal and was remanded for another trial on a ground not material to the present inquiry (138 Mo. App. 17). We held in our opinion that the second count pleaded a cause on *quantum meruit* and we adhere to that opinion notwithstanding the argument to the contrary in the briefs of defendants. A second trial in the circuit court resulted in a verdict and judgment for plaintiff on the first count and for defendants on the second. Defendants appealed.

Plaintiff was a manufacturer of straw paper in Dayton, Ohio, and defendants were wholesale liquor dealers in Kansas City, doing what is called a mail order business in the transaction of which they sold liquor in small quantities and shipped it by express and as freight to consumers in the territory tributary to Kansas City. In such shipments the bottles were packed in boxes and each bottle was enclosed in a corrugated straw paper wrapper to prevent breakage in transit. The corrugations of the wrappers served as cushions between the bottles and the wrappers were made of rye, wheat and oats straw. Those made of rye straw were lighter but stronger than those made of either wheat or oats straw. Corrugated pads also were used as cushions in the tops and bottoms of cases. A carload of wrappers, pads and advertising labels pasted on the wrappers sold and delivered by plaintiff to defendants in July, 1905, is the subject of the controversy. The goods were sold f. o. b. cars at Kansas City and were received by defendants who paid the freight charges for the account of plaintiff, hauled the goods to their places of business and immediately began using them. Under date of July 23, 1905, which was two days after the goods were received from the railroad company, but the same day the use of the goods began, defendants wrote plaintiff:

"We just received your car of wrappers, and find that they were printed the wrong way on the manilla sheet. For a left-handed person the wrappers are printed correctly, but, unfortunately, all of our employees are right handed. This mistake makes it not only inconvenient in wrapping bottles, but necessitates a loss of time, which amounts to considerable on a car lot. In wrapping bottles with wrappers printed in the manner you have them, it is necessary for anyone to hold the bottles by the base instead of the neck. We believe we are entitled to an allowance on account of the mistake on your part."

Plaintiff replied to this letter immediately, insisting that the manilla pasters on which the advertisement was printed were properly attached to the wrappers and requesting that samples of the wrappers defendants claimed were wrong be forwarded for inspection. Defendants did not press this claim for an allowance any further but on July 26, telegraphed plaintiff: "Express immediately cut used on our wrappers and oblige." Defendants had sent plaintiff a wood cut of a distillery for use in printing the manilla labels and the telegram referred to that wood cut. On the same day (July 26th) defendants sent plaintiff the following letter:

"We find upon comparing the wrappers you just sent us with those we received in previous shipment, that you have sent us a much inferior wrapper. We cannot use the wrappers. The corrugations are entirely too light and soft and will not protect the bottles in transit. To use the wrappers would not only mean a loss of goods, but a loss of customers as well.

We have weighed the wrappers you just sent us and those shipped in previous lot, and we find a considerable difference in weight. Owing to these facts we will not use the shipment you forwarded, and will hold the entire lot subject to your orders.

We are not looking for an allowance in this matter, and could not afford to accept them even though they were given to us free. We cannot afford to jeopardize our trade in using them. Please give us disposition by wire, as we have no room to store these wrappers. Unless we hear from you quickly we shall store them at your expense.

Under separate cover we are mailing you sample of wrappers for your inspection."

July 28th plaintiff wrote defendants a long letter in refutation of the ground on which defendants based their right to rescind the contract. When plaintiff offered this letter in evidence counsel for defendants, in effect, conceded its relevancy and admissibility but objected to a part of the letter as "incompetent and immaterial" and asked that the objectionable part be withheld from the jury. The part objected to is as follows: "We have been in business a long time and have never had a complaint like this before and have been furnishing these to such people as G. W. Shawhan, H. Rosenberger & Co., Reefer's Green Mountain Distillery, R. Eisen & Co., and in fact, all the large jobbers. Just before your car left we shipped a car to A. Rosenberger of your city, made out of the same material and we had no complaint from him. His goods were made at the same time yours were, run from the same machine and out of the same stock."

The court overruled the objection and allowed plaintiff to read the entire letter to the jury. The instructions afterward requested by defendants did not contain a direction to the jury to disregard the irrelevant matter. Defendants used none of the goods after July 26th, but held them subject to the order of plaintiff, until they were destroyed by a fire that occurred in defendant's business house. There is evidence introduced by defendants tending to show that the goods were so defective in the manner claimed by them that they were worthless for the purposes of

their intended use and that defendants rescinded the sale as soon as they discovered the defect and as soon as a reasonably careful and prudent person in their situation should have discovered it. On the other hand the evidence of plaintiff is to the effect that the goods complied with the contract of sale, were adapted to the purposes of their intended use, and from all of the evidence, a reasonable inference may be indulged that defendants continued to use the wrappers after they had full knowledge of their true condition. The contract of sale was made by correspondence and was not the first contract of that character made by the parties. At first a traveling salesman of plaintiff had called on defendants and solicited orders for wrappers and pads. Later, plaintiff sent defendants samples at their request and defendants sent in their order for a large quantity of the goods. The samples which induced the order were made of rye straw and it appears that such straw produces lighter, stronger and better wrappers and pads than may be obtained from either wheat or oats straw. In their letter ordering the car in controversy, which was dated Dec. 17, 1904, defendants said ''The samples you sent us before we ordered our last car were a substantial rye straw wrapper, but the car we received from you was mixed rye and wheat straw, mostly the latter. The wheat straw wrappers were not nearly so good as the samples we received from you. If you wish to enter our order for a car of quart bottle wrappers and will send us the rye straw corrugated paper . . . at $4.40 f. o. b. Kansas City, you can make shipment at once.''

Answering this letter plaintiff said in part: ''In reference to what you claim that the original sample we sent you of your wrappers, was all rye straw. This may be so, but as the sample was taken from some goods that we have had in stock for quite awhile, is the only way we can account for it.

At the mill where we make our paper, the rye crop has been almost a total failure this year, and we are therefore compelled to use both wheat and oats straw, and what little rye straw we can get hold of. We agree with you that the wheat straw wrappers are not as good as the rye straw wrappers, and we herewith beg to state that we are the only mill in the United States which uses any rye straw whatever, and therefore if you were to buy from any one else you would get nothing but wheat straw.

We regret that we cannot accept your order for a carload of rye straw wrappers, for reasons stated above. However, if you wish us to enter your order for one car of Corrugated Wrappers to be made out of such stock as we have, we will accept same at the old price.

Defendants replied directing plaintiff "to fill the order we mailed you recently using stock that you have on hand but to include as many of the rye straw wrappers as possible." Plaintiff accepted this order saying, "we are afraid that there will not be many rye straw wrappers in this car as we have very little of that class of paper on hand. However as requested, we will give you all that we possibly can."

Defendants complain of instruction numbered two given at the request of plaintiff in which the jury were directed to return a verdict for plaintiff on the first count if they found "that the carload of bottle wrappers and pads received from plaintiff by defendants in Kansas City on the 20th day of July, 1905, were, when received by them, equal in quality to other bottle wrappers and pads delivered by plaintiff prior to the delivery of this carload and accepted and paid for by defendants."

It is the contention of defendants that the samples originally sent to defendants by plaintiff and not the goods contained in the first carload purchased and paid for by defendants afforded the standard by which

the quality of the goods in question was to be meas-
ured and in the letters written by defendants in the
epistolary controversy as well as in the testimony of
defendants this position was sought to be maintained.
But the letters constituting the contract from which
we have quoted clearly refute this contention which,
if found to be sound, would compel us to hold that the
court should have peremptorily directed a verdict for
defendants, since the facts are indisputable that the
samples were of rye straw wrappers and the goods de-
livered were principally of other kinds of straw. The
contract expressly provided for goods of a lower qual-
ity than the samples and contemplated that they might
contain even a less percentage of rye straw wrappers
and pads than the first shipment. Consequently in
adopting the first shipment as the standard by which
the last should be measured the instruction held plain-
tiff to a higher standard than that imposed by the con-
tract, and this being true, defendants have no just
ground of complaint against the instructions. If
the goods were of the same quality as that of the first
shipment, defendants received what they bought and
intended to buy and should pay the contract price.

Defendants object to the third instruction given
at the request of plaintiff which told the jury to give
plaintiff a verdict for the reasonable value of the goods
if they believed from the evidence ''that the carload
of bottle wrappers and pads referred to in plaintiff's
petition when received by defendants in Kansas City
were not of the quality described in instruction No. 2,
yet, if you believe from the evidence that said goods
were not wholly worthless but had some value, and
that defendants after receiving said goods examined
them and accepted them or kept them an unreasonable
length of time considering all the circumstances shown
by the evidence before notifying plaintiff of their re-
fusal to accept them,'' etc.

Plaintiff had a right to plead the same cause in different forms and in separate counts to meet different possible phases of proof. [Globe Light & Heat Co. v. David, 47 Mo. App. 439; Brinkman v. Hunter, 73 Mo. 172; Gaslight Co. v. City, 86 Mo. 495; Mosely v. Railway, 132 Mo. App. l. c. 647.] And the evidence presents different phases of proof and warrants the indulgence of different hypotheses of fact, among them, the one that the goods were inferior in quality to contract requirements, but were not worthless for the purposes of their intended use and were used by defendants after their inferiority had become known. On such hypothesis, defendants' retention and use of the goods precluded them from afterwards rescinding the contract and left them to their remedy at law for the recovery of their damages sustained on account of plaintiff's breach of contract in respect of the quality of the goods. And in such case plaintiff could not recover the contract price in this action but only the reasonable value of the goods. The instruction properly declared the law applicable to the second count but had it been erroneous defendants would not now be heard to complain of the error, since the jury found in their favor on the second count and based the verdict for plaintiff on the first count on the conclusion, amply sustained by evidence, that the goods delivered by plaintiff fully complied in quality with the contract.

Other objections are urged to instructions given by the court but they are without merit and we turn to objections urged against rulings on matters of evidence.

Defendants argue that the court erred in refusing to strike out the paragraph we quoted from plaintiff's letter of July 28, 1905. We may concede, for argument, that the statements in that paragraph were self-serving and related to collateral facts not material to the issues of the present case and that the court should have withheld them from the jury but inasmuch as

the other parts of the letter were relevant to issues under investigation, defendants waived the objection to the self-serving statements by not asking the court to withdraw them from the jury in an appropriate instruction. [Hitt v. Hitt, 150 Mo. App. 631; Garesche v. College, 76 Mo. 332; Sutter v. Raeder, 149 Mo. 297; Dysart v. Forsythe, 84 Mo. App. 190; Soulard v. Clark, 19 Mo. 271.]

Paraphrasing an excerpt from the opinion in the last case cited the rule of practice is well settled that where a document is proper evidence of a fact it will be admitted and the opposite party is left to his motion to exclude the irrelevant matter from the consideration of the jury. Finally defendants object to the cross-examination counsel for plaintiff, over the objections of defendant, were permitted to give one of the defendants. In the introduction of its own evidence, plaintiff attempted to prove that defendants were actuated by a sinister motive in refusing to receive the goods and not by any consideration of inferiority in the goods themselves. In the advertising matter printed on the manilla pasters appeared the picture of a large distillery in Baltimore, Maryland, and the false statement that it was owned and operated by defendants. Shortly after refusing to accept the shipment defendants placed another order for wrappers and pads with another manufacturer and altered its advertisement to correct the false representation. Plaintiff attempted to prove these facts and also the facts that about the time of these occurrences a fraud order had been issued against another liquor dealer by the post-office department on the ground of a similar misrepresentation, and the object of plaintiff was to convince the jury that the fear inspired in defendants that a similar fraud order would be issued against them caused them to seek a pretext for throwing the goods back on the plaintiff. The court excluded all evidence of this character but allowed plaintiff to re-

fer to these matters in the cross-examination of one of the defendants.

The rule relating to collateral facts thus is stated in Greenleaf on Evidence (13 Ed.), par. 52: "This rule excludes all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is that such evidence tends to draw away the minds of the jurors from the point in issue and to excite, prejudice and mislead them; and moreover the adverse party having had no notice of such a course of evidence, is not prepared to rebut it."

We discussed and applied this rule in the recent cases of Council v. Railroad, 123 Mo. App. l. c. 442, and Horr v. Railway, 156 Mo. App. 651, 137 S. W. 1010. But the judicial and text-writers, especially the modern writers (see in this connection Wigmore on Evidence, vol. 1, secs. 38, 39) in effect divide what is termed collateral facts into two classes, i. e. first, those from which no reasonable inference may be drawn in respect of the truth or falsity of a disputed and elemental fact of the pleaded cause and, second, those from which such inference may be drawn. The first class is treated as extrinsic to the true sphere of the legitimate issues formed by the pleadings and, therefore, as irrelevant, but the second, though outside the body of the true issues, nevertheless (to borrow a figure of speech) is within its *penumbra* and is as much a part of the case as the atmosphere is a part of the earth.

"Facts or circumstances, upon which a reasonable inference may be founded as to the truth or falsity of a disputed fact which is elemental to the cause of action are not extrinsic but are germane to the issue." [Council v. Railroad, supra.]

The court kept well within the principles just stated in refusing to receive direct proof of the facts

under consideration. Certainly the cross-examination was proper since the credibility of the witness was an additional issue and the facts inquired about had a direct bearing on that issue.

We find no prejudicial error in the record and, accordingly affirm the judgment.

All concur.