## WILLIAM M. SPICER et al. v. BENJAMIN F. SPICER, Appellant.

**Division Two, April 8, 1913.**

1. **EVIDENCE: Shown by Abstract as Admitted: Shown by Additional Abstract as Excluded.** Where appellant contends that certain evidence, shown by his abstract of the record to have been admitted, was erroneously admitted, and respondents file an additional abstract, to which appellant raises no objection, showing that the evidence was excluded, it will be assumed that the additional abstract is correct.

2. **QUIETING TITLE: Adverse Possession: Evidence: Reputation: Introduced by Record Holder.** Title cannot be proved by reputation, but, upon the issue of title by adverse possession, the great weight of authority is that the adverse claimant may introduce evidence to the effect that he is the reputed owner, for the purpose of showing that his claim was notorious, and therefore brought to the knowledge of the owner. Likewise, such evidence is admissible when offered by the parties claiming under the record owner, as in rebuttal, or as tending to show the absence, of the notoriety of the adverse claim. It tends, at least, to negative knowledge upon the part of the record owner, and the adverse claimant should protect his rights by asking an instruction limiting its effect.

3. ————: ————: "Notorious" Defined. "Notorious," as applied to adverse possession, means, "generally known and talked of; universally recognized; conspicuous; well, widely or commonly known."

4. ————: ————: Burden of Proof: Includes Proving Adverseness. The burden of proving title by adverse possession is upon the party who aserts it, and the admission by the opposite party of the claimant's possession does not relieve the claimant from proving it adverse. Mere possession does not create title by limitation, however long continued.

5. ————: ————: Prima Facie Evidence: Deeds and Records: Not for Jury. Where certain deeds, acknowledged in accordance with Sec. 2818, R. S. 1909, a copy of a will and its probate, certified in accordance with Sec. 565, R. S. 1909, and an order of the probate court, proved by the original record, are introduced in evidence, they constitute in that form *prima facie* evidence of their execution, and when there is no evidence to the contrary their execution is not an issue for the jury.

6. ————: ————: Evidence: Instructions: Tenancy of Adverse Claimant. In a suit to quiet title, to which the defendant pleaded adverse possession, it is *held* that there was evidence warranting the giving of instructions which included the question whether defendant held as tenant of plaintiffs' testator.

7. ————: ————: ————: Record Title Proved: Question for Jury. Where, in a suit to quiet title, the evidence showed plaintiffs to be the record owners, the question of defendant's title by adverse possession was for the jury.

8. ————: ————: Parties: Executor with Order to Rent to Pay Debts. While an executor with an order from the probate court to rent the real estate to pay debts, is not a *necessary* party to a suit to quiet title under Sec. 2535, R. S. 1909, he has such claim or interest in the land as to make him a *proper* party plaintiff.

9. ————: ————: Order of Court Regular on Face: Presumption.. Where the order of the probate court giving an executor authority to take possession of and rent the testator's land for two years to pay debts was regular on its face, it will be presumed that the court acted regularly and with due authority.

10. ————: ————: Parties: Executor with Order to Rent for Two Years: Sec 139, R. S. 1909. Section 139, R. S. 1909, empowering the probate court to order an executor to take possession of and rent the land of his testator "for a period not exceeding two years" does not mean that in all cases the executor shall, at the end of two years from the date of the order, *ipso facto* lose all control or interest in the land, but

it does mean that he shall have the possession and the right to rent the land for a period not exceeding two years. And the fact that defendant was, when such an order was made, in possession of the land in question, claiming adversely, and continued for over two years, or until the trial of this suit, in such possession, does not prevent the executor from being a proper party plaintiff to a suit to quiet title.

11. **REPETITIOUS INSTRUCTIONS: Properly Refused.** Instructions are properly refused when they are merely repetitions of the law declared by the court in other instructions given at the request of the same party.

## Appeal from Platte Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

AFFIRMED.

*James W. Boyd* and *James H. Chinn* for appellant.

(1) The reply of plaintiff admits appellant's possession of said lands for and during thirty-five years next before the institution of this suit. In said reply it is not alleged or claimed that defendant's possession was of a character different from the possession of defendant as alleged in his answer. After said admission as to possession to defendant in said reply, we find the following words: "And each and every other allegation made and contained in said answer they deny." Now, the character of defendant's possession is fully set forth in his answer, as follows: "That he has been in the actual, adverse, open, hostile, exclusive and continuous possession of said lands and real estate under claim of exclusive ownership for and during the last thirty-five years." The character of his possession is therefore not denied by the reply, and according to the reply his possession during said thirty-five years was of such a character as that alleged in his answer. (2) Under the law, the executor or administrator is not entitled to the possession of the

real estate of his decedent. He has no right to bring a suit to declare the title. He is not a representative of the heirs as to the title. Secs. 147, 148, 149 and 150, R. S. 1909; Grant v. Hathaway; 215 Mo. 147; Thorp v. Miller, 137 Mo. 231; Hall v. Bank, 145 Mo. 418; Burdyne v. Mackey, 7 Mo. 374. (3) The real estate descends to the heirs. This doctrine has been so often stated that it is not necessary for the appellant to repeat it. McKee v. Downing, 224 Mo. 126; McQuitty v. Wilhite, 218 Mo. 586; Thorp v. Miller, 137 Mo. 238. (4) So far as the executor is concerned, there is nothing in the case to show that the probate court had authority to make the order which the plaintiffs read in evidence, dated October 7, 1907. The plaintiffs should have shown some fact authorizing the court to make an order. Sec. 139, R. S. 1909; McKee v. Downing, 224 Mo. 126; McQuitty v. Wilhite, 218 Mo. 186; Thorp v. Miller, 137 Mo. 231; Hall v. Bank, 145 Mo. 418; Langston v. Canterbury, 173 Mo. 130. "The lands of a decedent descend to his heirs (or devisees if so the will reads), and the possession of the land and defense of the title and all of its incidents belong to the heirs or devisees, and the personal representatives have nothing at all to do with it; no concern in the matter." Grant v. Hathaway, 215 Mo. 141; Aubuchon v. Lory, 23 Mo. 99; Chambers v. Wright, 40 Mo. 482; Woerner, Admn., secs. 338, 376; Hale v. Darter, 5 Humph. (Tenn.) 80; 18 Cyc. 297-9; 11 Am. & Eng. Ency. Law (2 Ed.), 838. But assuming for the purpose of the argument that the court did make that order, it is absolutely certain that the executor could not have any right to the possession of said land after the expiration of two years. Sec. 139, R. S. 1909. The alleged order was made October 7, 1907. The case was tried December 20, 1909. At the time of the trial, it is impossible to conceive that the executor had any interest in these lands. Grant v. Hathaway, 215 Mo. 141.

*Martin E. Lawson, James H. Hull* and *George W. Day* for respondents.

(1)   The answer set up adverse possession. A hostile possession is requisite to a title by adverse possession. The reply admitted the possession, but denied that it was hostile. This made an issue as to the character of defendant's possession. R. S. 1909, secs. 1811, 1806; Hunnewell v. Burchett, 152 Mo. 614; Stevenson v. Black, 168 Mo. 560; Long v. Coal & Iron Co., 233 Mo. 731.   (2)   One of the things defendant undertook to prove was that his claim of ownership of the land was notorious. This for the purpose of raising a presumption that his brother William knew of such claim. Evidence to show the reputed ownership of the farm in the neighborhood was therefore properly received. Maxwell v. Dawson, 151 U. S. 603; Sparrow v. Hovey, 44 Mich. 744; Long v. Coal & Iron Co., 233 Mo. 731; Drumm-Flato Com. Co. v. Bank, 107 Mo. App. 426; Neudeck v. Grand Lodge, 61 Mo. App. 105; Hunnewell v. Burchart, 152 Mo. 614; Knight v. Knight, 178 Ill. 553.   (3)   The order of the probate court entitled the executor to the possession of the land in controversy, to enable him to rent it, collect the rents, and make repairs, and by the express terms of the statute he could maintain an action for the recovery of such real estate. Therefore he had an interest in it to be determined. R. S. 1909, secs. 139, 2535; 22 Cyc. 1581, 1582, 1583; Ball v. Woolfolk, 175 Mo. 278; Utter v. Sidman, 170 Mo. 284; Meriwether v. Love, 167 Mo. 514; Huff v. Land & Imp. Co., 157 Mo. 65.   (4)   Respondents were not bound to show any authority for that order. The court will be presumed to have acted upon a proper showing. If there was no such showing, it devolved upon the appellant to put in evidence such facts as would make void the order. Langsten v. Canterbury, 173 Mo. 131.   (5)   Orders and judgments of the probate court, relating to mat-

ters within their jurisdiction, will be presumed to have been regularly made and entered, and will have accorded to them the same favorable presumptions as judgments of our circuit courts. Macey v. Stark, 116 Mo. 494. (6) The order of the probate court did not become extinct two years after its making. The two-year limitation is on the period of time for which the executor may rent the land. R. S. 1909, sec. 139. (7) Appellant's defense was that he had taken away the title of his brother by an adverse possession. Therefore the court properly instructed the jury that they must find for the plaintiffs unless they found that defendant had acquired the title to said land in the manner required by other instructions, all of which related to title by adverse possession. Hunnewell v. Burchett, 152 Mo. 614; Stevenson v. Black, 168 Mo. 561.

WILLIAMS, C.—This suit was instituted in the circuit court of Platte county, Missouri, to determine and define the title to eighty acres of land described as the west half of the southwest quarter of section 21, township 52, range 33, in Platte county, Missouri.

The petition alleges that William A. Spicer died testate June 30, 1907, seized of an estate in fee simple in said land; that his will was duly approved and admitted to probate in the probate court of Clay county, Missouri, on July 10, 1907; that by the terms of said will said real estate was devised to plaintiffs, William M. and George H. Spicer, share and share alike; that plaintiff William M. Spicer was named as executor in said will, and was by said probate court duly appointed as such executor, and letters of administration issued to him; that on October 7, 1907, said probate court, being satisfied that it was necessary to rent said estate for the payment of debts, made an order of record requiring said executor to take possession of and rent said real estate, which order, the petition alleges, is still in force and effect; that de-

fendant is in possession of said real estate, claiming some title, estate or interest therein, but that said defendant has no title, estate or interest in said property. The prayer of the petition asks the court to determine and decree the title, estate and interest of the respective parties, and to adjudge and determine that said defendant has no title, estate or interest in or to said property.

The answer first sets up a general denial, except that defendant admits that he is in possession of said land. For further defense and answer defendant alleges, first, that he is the owner in fee simple title to said land; second, that he has been in the actual, adverse, open, hostile, exclusive and continuous possession of said land, under claim of exclusive ownership, for and during the last thirty-five years, and that said William M. Spicer, as executor, is neither a necessary nor proper party to this suit, and that defendant should not in law or otherwise be burdened with his pretensions as such alleged executor.

Plaintiffs filed a reply, admitting that defendant has been in possession of said land for a period of thirty-five years, and denying each and every other allegation made and contained in said answer.

The case came to trial December 20, 1909, and by agreement of the parties the same was tried before a jury, which trial resulted in a verdict and judgment in favor of plaintiffs, fixing the respective interests of plaintiffs as described in the petition. Defendant appealed.

Plaintiffs introduced in evidence recorded deeds and title papers, or duly certified copies of same, beginning with the United States patent, dated May 1, 1846, down to the warranty deed, dated March 25, 1865, from Thomas P. Hardesty and wife to the testator. The documentary proof thus adduced constituted a complete chain of conveyances from the Government down to said William A. Spicer, except that no deed

was introduced from Absalom H. Waller to one Thomas S. P. Cravens. This missing link in the chain of title was supplied by proof of the death of said Waller and wife, and a showing made as to the heirs of said Waller, and then a quitclaim deed from the Waller heirs to William M. and George H. Spicer, plaintiffs herein, and devisees as aforesaid in said will. This quitclaim deed recited that in 1858 said Waller had executed and delivered to said Cravens a deed conveying said land to Cravens, but that said deed was never recorded. A further showing in this regard was made to the effect that said Waller, as judgment creditor, had caused said land conveyed to Cravens to be levied upon and sold under execution in November, 1864, at which sale said Thomas P. Hardesty, testator's grantor, became the purchaser. Plaintiffs then introduced in evidence that portion of the will of William A. Spicer, deceased, showing the devise of said land to said William M. and George H. Spicer, plaintiffs herein. Plaintiffs were nephews of testator, and are also nephews of defendant, testator and defendant having been brothers.

Defendant's evidence tended to show that up to the time of the trial, and for thirty-five years prior thereto, defendant had been in continuous possession of the land, tilling the soil, harvesting the crops, and selling some of the surplus products; that about nineteen years before the trial he had purchased fruit trees and set out an orchard on the farm; that he also purchased some barbed wire, had some posts made, and built a barbed wire fence along the north and west portion of the farm, facing the public highway, and put some woven wire fencing around the yard. He also planted some shade trees in the front yard, and shingled the dwelling house twice, the first time many years before the testator's death, and the second time after that occurrence. About twelve years before the trial defendant built a small log crib, with a shed ex-

tension which was used as a buggy shed.  Several
years before the trial he built a hen house and smoke-
house on the premises.  About twenty-one years before
the trial he had the entire house plastered, and had
also new floors put in the kitchen, once before and again
after the death of the testator.  Some of defendant's
children testified that defendant had always sold the
surplus products of the farm; that to their knowledge
no rent was ever paid by defendant; that defendant
always claimed to own the place by calling it "home,"
and that the testator was seldom on the place.

William L. Frazier, brother-in-law of defendant,
testified that in 1893 he, together with some neighbors,
including defendant, were planning to go to Oklahoma
to attend the opening of the Strip and try to get some
land, that witness told testator that defendant was
going with them, and that the testator replied, "You let
Ben stay where he is at; he has got a good home there,
and I want him to stay there and take care of Betty
(defendant's wife) and the children;" that in a few
minutes defendant came along, and the testator said
to him, "Ben, I have given you a good home where
you are at, and want you to stay there and take care
of Betty and the children."

Jane Wingo testified for defendant that about
1900 she was looking for a farm to purchase, and called
upon the testator for the purpose of seeing about the
purchase of this eighty acres, but that testator told
her the place was not for sale, and that he had given
it to Ben.  Later, on cross-examination, this witness
changed her testimony, saying that the testator, in re-
plying to her inquiry about the farm, said that it was
not for sale, and that he had told Ben that if he lived
there until he died the place would be Ben's, but that
he wanted to reserve the privilege of making his home
there if he so desired.

One of defendant's witnesses, on cross-examina-
tion, testified that about thirty years before the trial,

and two years after defendant moved to the place, the testator hired and paid him (witness) to gather a field of corn on the place and store it on the premises, and that the testator had live stock on the place when the defendant moved there and gradually sold the stock off. Another witness for defendant, on cross-examination, said that during the period of defendant's possession the common understanding of the people of the neighborhood was that the testator, William A. Spicer, owned the farm, and another of defendant's witnesses testified on cross-examination that defendant had more than once told him that the place belonged to his brother, the testator.

At the close of defendant's evidence plaintiffs introduced rebuttal testimony, proving by a large number of witnesses, some of whom were defendant's close neighbors, that it was the general reputation or understanding in the neighborhood that the testator William A. Spicer, deceased, was the owner of the farm, and that they had never heard defendant claim to own it. One witness testified that at the time defendant set out the orchard on the farm, he was asked why he was putting out an orchard on a farm he did not own, and that defendant replied, "There was a good orchard on the farm when I went there, and I want to leave it in as good a fix when I leave it." Other witnesses testified that testator kept horses on the farm, more or less, during all the time that defendant was in possession prior to testator's death.

George W. Spicer, brother of defendant and also of the testator, testified that from the year 1889 down to 1906 he had paid all the taxes on said eighty acres for the testator, and another witness testified to paying the taxes on the land for the executor since the testator's death.

The land assessment books of Platte county were offered in evidence, showing that for four years, from 1904 to 1907 inclusive, this land stood on the assess-

ment books in the name of the testator. Witnesses testified to two conversations had with defendant, in which he stated in effect that if the testator did not cover the house and fix up the fences, he would leave there.

Witness Ben Moore testified that in 1893 defendant came out of the house in which the testator was, and appeared angry, and that when he came down into the yard where witness and some other persons were standing, he said, "If Will (meaning testator) don't fix up that house he was going to leave it; he was getting tired of paying rent, and living outdoors."

Witness Shanklin testified that he was seventy-one years of age, had lived in the neighborhood since 1841, a portion of the time on the farm adjoining the one in controversy, and that about ten or fifteen years before the trial he asked defendant why he did not put the meadow on the place in corn, and that defendant replied, "Will would not allow him to, or would not let him."

Claib Thornhill testified that in 1882 or 1883 he built the barbed wire fence along the road on the northwest corner of the farm, that the testator paid him for doing it, and that about fifteen years before the trial defendant hired him to build a fence half way across the eighty acres, saying that he had been trying to get his brother Will to build it, but that he did not take any interest in it; that at another time he heard defendant say "rent was so high he could not pay it in this country, and he was going south to see if he could hunt him out a home."

J. W. Markwell testified that he lived on a farm adjoining this land on the east, that there was a division line hedge fence between the two farms, that he had trimmed the hedge for ten or twelve years, and that testator had paid him for half of his work. This witness also testified that defendant told him at one time that he was paying as much rent as anybody, that

he had never heard defendant claim the place before the testator's death, and that testator had horses on the farm most of the time.

Mrs. George W. Spicer testified that about twenty years before the trial, defendant told her that "by the time he paid his rent there he had nothing much left for the children."

Dr. Barr's testimony was in deposition form, and to the effect that he purchased a stack of hay located on this land during the time defendant was in possession, and that he had paid testator for it by giving the testator credit on a bill.

Frank Burkhead testified that in 1905 or 1906 he heard defendant ask the testator about plowing up some sod on the place, and that testator told defendant not to plow it up. This witness further testified that the testator kept horses on the place during a portion of the time; that at one time testator sold one of these horses, and witness went to the farm to get the horse and deliver it to the purchaser, and that defendant helped him catch the horse.

William Robertson testified that about the year 1906, while hunting on the farm in controversy, he was introduced to defendant, and that later on the same day he saw defendant again and asked him how much he would take for the place, defendant replying, "The land is not mine—I am just a renter; I rent it from my brother."

Defendant went on the witness stand to give surrebuttal testimony, and denied each and every one of the statements ascribed to him by plaintiffs' witnesses. Two other witnesses for defendant testified that Claib Thornhill never built the barbed wire fence along the road.

Appellant contends that the court committed error, first, in admitting certain evidence offered by plaintiffs; second, in giving plaintiffs' instructions 1,

2 and 3; third, in refusing defendant's instructions A, B, C, and D.

I. Appellant contends that the court erred in admitting certain portions of the will of William A. Spicer, deceased, which stated that he was the owner of the land in controversy, and that it was rented to defendant. Appellant's abstract of the record shows that

Additional Abstract: Assumed to be Correct When not Objected to

these portions of the will were admitted, but respondents filed an additional abstract, showing that said portions of the will were not introduced, but were, upon objection of defendant, excluded from the evidence, and not read to the jury. Appellant having raised no objection to respondents' additional abstract, it must be assumed that that portion of the record is as shown by such additional abstract, and further discussion of the point would serve no useful purpose.

The court permitted plaintiffs, over objection and exception of defendant, to show by a number of witnesses that the general reputation or understanding in the neighborhood was that testator William A.

Quieting Title: Adverse Possession: Reputation: Evidence.

Spicer, up to the time of his death, was the owner of the land involved. It is well settled that title cannot be proven by reputation. [2 Wigmore on Evidence, sec. 1587.] However, upon the issue of title by adverse possession, the great weight

of authority is that the adverse claimant may introduce evidence to the effect that he is the reputed owner, for the purpose of showing that his claim was notorious, and therefore brought to the knowledge of the owner. In the case of Maxwell Land Grant Co. v. Dawson, 151 U. S. 1. c. 603, the court says:

"There was no error in admitting testimony to the effect that the land claimed by Dawson was generally reputed to belong to him. Claiming as he did

by open, notorious and adverse possession of these lands for a period sufficient . . . . to give him good title, it was competent to prove that it was generally understood in the neighborhood, not only that he pastured his cattle upon these lands, but that he did so under a claim of ownership, and that his claim and the character of his possession were such that he was generally reputed to be the owner. . . . It had an important bearing upon the notoriety of his possession.''

To the same effect are the following authorities: Sparrow v. Hovey, 44 Mich. 63; Lusk v. Pelter, 101 Va. 790; Owen v. Moxon, 167 Ala. 615; Knight v. Knight, 178 Ill. 553; 2 Ency. of Ev., p. 683 (a); 1 Cyc., p. 1148 (b); Wigmore on Ev., vol. 1, sec. 254; vol. 2, p. 1941 (9).

While the evidence in the case at bar was not offered by the adverse claimant to show the notoriety of his claim, as was true in the cases cited above, but was offered by the parties claiming under the record owner, yet the same was admissible as in rebuttal, or as tending to show the absence of the notoriety of defendant's adverse claim, and, at least, was evidence tending to negative knowledge upon the part of the record owner. ''Notorious,'' in the sense here used, has been defined by this court to mean, ''Generally known and talked of; universally recognized; conspicuous; well, widely or commonly known.'' [Long v. Lackawanna Coal & Iron Co., 233 Mo. l. c. 740.] Appellant cites no authority as supporting his contention, but asserts that respondents' counsel in arguing the case to the jury, laid undue emphasis on the evidence as proof of title. Appellant could have protected his rights in this regard by requesting an instruction limiting the use of this evidence to the purpose above indicated, but failed to do so. In the case of Owen v. Moxon, supra, the court, in discussing the effect of evidence of this character, says:

**"Notorious."**

"If it tended to show ownership, or facts other than notoriety of the possession, the appellant should have requested a limitation to this effect, but cannot put the trial court in error for letting it in, as it was relevant for certain purposes, and the objection attempted to keep it out entirely."

II. Appellant insists that error was committed by the court in giving plaintiffs' instructions 1, 2 and 3, in that, first, said instructions impose upon the defendant the burden of proving his title by adverse possession; second, they fail to submit to the jury the issue as to whether the will and the deeds were executed; third, that there was no evidence upon which to base that portion of the instruction telling the jury that if the occupation, possession and control of defendant over said land were enjoyed by defendant as tenant of the testator, the defendant could not recover.

As to the first proposition, it is sufficient to say that the burden of proving title by adverse possession is upon the party who asserts it. [Buswell on Limitations and Adverse Possession, sec. 236; 1 Cyc., p. 1143; Dameron v. Jamison, 143 Mo. 483; Smith v. City of Sedalia, 152 Mo. 283.] The application of this rule to the present case is not in anywise disturbed, as contended by appellant, by the fact that plaintiffs admitted that defendant had been in possession of the land for thirty-five years. The admission of mere *possession* did not relieve defendant from proving the elements constituting *adverse possession*. "Mere possession does not create title by limitation, however long continued." [Crowl v. Crowl, 195 Mo. 338.]

**Burden of Proof.**

With reference to the second contention, the deeds were duly acknowledged so as to come within the scope of section 2818, Revised Statutes 1909. The certified copy of the will and probate thereof con-

**Prima Facie Evidence of Deeds and Orders.** formed to the requirements of section 565, Revised Statutes 1909. The order of the probate court directing the executor to take possession and rent the land was proven by the original record thereof. The documentary proof in the above form was *prima facie* evidence of the execution thereof. [Barbee v. Bank, 240 Mo. 297.] Defendant offering no evidence to the contrary, the execution of the documents, thus proven and uncontradicted, was not an issue for the jury's determination, and the court committed no error in assuming that said documents were properly executed. In discussing the effect of such *prima facie* evidence, Mr. Justice STORY, in the case of Kelly v. Jackson, 31 U. S. (6 Peters) 622, says:

"What is *prima facie* evidence of a fact? It is such as, in judgment of law, is sufficient to establish the fact; and, if not rebutted, remains sufficient for the purpose. The jury are bound to consider it in that light, unless they are invested with authority to disregard the rules of evidence, by which the liberty and estate of every citizen are guarded and supported. No judge would hesitate to set aside their verdict and grant a new trial, if, under such circumstances, without any rebutting evidence, they disregard it. It would be error on their part, which would require the remedial interposition of the court. In a legal sense, then, such *prima facie* evidence, in the absence of all controlling evidence or discrediting circumstances, becomes conclusive of the fact."

Appellant's third contention is not substantiated by the evidence, which we have carefully reviewed.

**Evidence of Tenancy.** There was evidence of statements made by defendant, during his occupancy of the land, to the effect that he was a tenant of his brother, the testator, and of other statements of his concerning the payment of rent.

III. At the close of all the evidence, appellant requested the court to instruct the jury that the plaintiffs were not entitled to recover. This request was properly refused. The evidence showed plaintiffs to be the record owners, and the question of defendant's title by adverse possession was for the jury to determine, under proper instructions. In this regard, appellant very ingeniously insists that, at least, he was entitled to have this instruction so far as the claim of William M. Spicer, as executor, was concerned, on the grounds, first, that he was neither a necessary nor proper party; second, that even if he was a proper party, the plaintiffs failed to prove that the probate court had authority to make the order giving the executor authority to take possession of and rent the land for two years for the purpose of paying debts, as provided by section 139, Revised Statutes 1909; third, that though the probate court did have such authority, the two years given by the statute had expired between the date of the order of the probate court and the trial of the cause.

*Instructions.*

*Parties: Executor with an Order to Rent.*

With reference to the first objection, we are of the opinion that, while the executor was not a necessary party, he had such a claim or interest in the land involved as to constitute him a proper party. Section 2535, Revised Statutes 1909, is very broad in its scope, and it has been held by this court that a tenant under a written lease has such an interest or claim as to come within the purview of this statute. [Mann v. Doerr, 222 Mo. 1.]

As to the second objection, it is sufficient to say that the order of the probate court was regular on its face, and when this is true it is to be presumed that the probate court acted regularly and with due authority. [Macey v. Stark, 116 Mo. l. c. 494.]

As to the third objection, appellant misinterprets

Spicer v. Spicer.

the statute, section 139, Revised Statutes 1909. The statute does not mean that in all cases the executor, at the expiration of two years from the date of the order, shall *ipso facto* lose all control or interest in the land but it does mean that he shall have the possession and the right to rent the same for a period not exceeding two years. In this case, the executor never had the possession, and could not have rented the land, the defendant being in possession of the same claiming it as his own. If appellant's construction of the statute were adopted, the statute would in many instances be evaded and rendered useless, and the heirs of an estate, or any person wrongfully in possession of the land, could, by contesting litigation for two years, virtually defeat the executor's right in that regard. Whenever consistent with reason, that construction which will make the statute operative should be applied. "It is a cardinal rule that all statutes are to be so construed as to sustain rather than ignore or defeat them; to give them operation if the language will permit, instead of treating them as meaningless." [2 Lewis' Sutherland on Stat. Construction (2 Ed.), sec. 498.] Appellant cites many authorities to the effect that real estate descends to the heirs, and that the executor or administrator has no right to the possession thereof, but all those cases deal with a situation where the probate court has made no order, as was done in this case, and are therefore not in point.

Appellant's refused instructions B, C, and D, so far as they contained declarations of law applicable to the case, were merely a repetition of the law declared by the court in the other instructions given at the request of defendant, and their refusal was not error.

The judgment of the circuit court is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The above opinion by WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.