JOHN FORD, Appellant, v. ORVILLE DAHL, Respondent, No. 41404— 228 S. W. (2d) 800.

Division One, March 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, April 10, 1950.

*Alan F. Wherritt, Robert F. Sevier, John S. Lodwick, E. E. Thompson* and *Sam Mandell* for appellant; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

*John W. Deck, Arthur R. Kincaid* and *Francis G. Hale* for respondent; *Lawson, Hale & Coleberd* of counsel.

 LOZIER, C.—This is an appeal from a judgment entered in an action for damages resulting from a collision between appellant's car, and respondent's truck on U. S. Route 69, north of Excelsior Springs, October 11, 1946. Plaintiff asked $15,000 for personal injuries and $500 for damage to his car. Defendant counterclaimed for $350 for damage to his truck. Verdict and judgment were for defendant on plaintiff's claim and for defendant for $275 on the counterclaim. Plaintiff's motion for new trial was overruled as to the judgment on plaintiff's cause of action and plaintiff appealed.

The highway runs northeast-southwest, but we shall consider it as running east and west. It slopes down from a hill crest about 700 feet north of, and is both straight and level (i. e., without horizontal curves) at, the collision point. The pavement is 30 feet wide, with three 10-foot travel lanes. The highway traffic is heavy, both day and night. On the south side is a filling station and on the north side, opposite the station, is a lane leading to a sales barn. The day was fair and the pavement was dry.

The collision occurred about 12:40 p.m. Plaintiff, unaccompanied, was driving his car north across the pavement. Defendant, accompanied by W. R. Reed, his business partner, was driving west in the north travel lane.

Plaintiff testified that, prior to starting across the pavement, he looked both ways and saw no traffic; that he could see 400 or

500 feet to the east; that he started across at 3 or 4 miles per hour and, while crossing, increased this speed to perhaps 5 miles per hour; that the collision occurred when his car was about halfway off the pavement; that no horn was sounded; and that he first saw the truck when it was 3 or 4 feet away.

Plaintiff's evidence was that the truck, if moving at 35 miles per hour, could have been stopped within 65 to 70 feet, and, if moving at 30 miles per hour, within 55 to 60 feet, both estimates including "reaction time" of the driver.

Defendant testified that he was driving west about 35 miles per hour; that when he first saw the car its front wheels were just across the south edge of the pavement and that the truck was about 75 feet away; that plaintiff was driving about 8 or 9 miles per hour and slowed slightly just as he crossed the middle of the pavement; that immediately upon seeing plaintiff's car, he (defendant) sounded his horn and applied his foot brake, full force; that such force became fully effective when the truck was about 8 or 9 feet from the car; that there was another truck coming east in the center travel lane which he saw when it was about as far west of plaintiff as he was east; that he could not, and did not, swerve to the left and drive behind the car because of this other truck; that the other truck did not stop; that he skidded 8 or 10 feet and that the right wheels of his truck were off the pavement when the collision occurred; that his brakes were in good condition and that several weeks before he had had them adjusted and tightened; that he did not use the handbrake and had no recollection of Reed shouting anything or grabbing the handbrake; and that he did not know the number of feet required within which to stop his truck.

W. P. Reed testified that the truck was traveling about 30 miles per hour and that there was another truck coming east; that when he first saw plaintiff's car the defendant's truck was about 75 feet away; that he thought the car stopped while crossing the pavement; that defendant applied the brakes and blew his horn; that he (Reed) grabbed the handbreak but "it was on," as defendant had already put on the brakes by applying the foot brake; that he "hollered, 'Look out!' and that time we struck"; and that the other truck passed them at the time of the impact and continued east.

The only other witness who saw the collision was Robert Melling. Newton Mallott, Marshall Williams and Warren Bivens heard it. Mallott testified that he was at the station and saw plaintiff back up his car prior to turning; that he (Mallott) looked up and down the highway, observed no traffic either way, walked across the highway and up the barn lane, heard a screeching of brakes and, "before I could look around I heard the crash"; that he heard no horn sounded; that after he had turned around he saw no eastbound traffic

going by, but that he did not look especially as his attention was on plaintiff's car.

Williams testified that he was in the barn lane and heard the crash. Bivens, operator of the filling station, testified that he was inside the station, and saw plaintiff back up and turn; that from plaintiff's speed he judged that the car was in low gear when he started forward; that plaintiff then "took out across the highway"; and that he (Bivens) did not see the collision but heard the crash.

Robert Melling testified that he was on the south side of the highway; that he first observed the car just as it was going on the pavement, moving about 4 or 5 miles per hour; that plaintiff did not stop before driving on the pavement; that he first saw the truck when the car was in the middle of the pavement, and that the truck was then about 250 or 300 feet east of the barn lane and was then going about 35 miles per hour; that plaintiff did not stop while crossing the pavement; that the car was going about 5 miles per hour and was about 6 feet off the pavement when it was struck; that defendant did not sound his horn and "didn't seem to 'break' speed"; that he (Melling) did not hear the screech of the truck's brakes immediately before the collision; and that there was no eastbound traffic.

Appellant's first assignment relates to the admission in evidence of defendant's Exhibit C. This was a statement apparently made and signed by Melling on October 15, 1946, four days after the accident. It contained both statements of fact and opinions. The contradictory statements of fact and the opinions (the latter italicized by us) were: "I heard an approaching westbound (truck) sound his horn just as (the car) started to cross. Then I heard his brakes screech and suddenly on looking more to the left I saw the John Ford car going north across the slab directly in the path of the oncoming truck. * * * I didn't see the John Ford car until it was already on the slab. * * * The truck was only about 30 to 35 feet east of the John Ford car when he sounded his horn. The truck driver veered to the right to a point where his right wheels were off the slab and then, *seeing that the John Ford car was still going on,* he cut back to the left *to try and go around the rear,* but an eastbound truck blocked him *and there was nothing for him to do but to hit the John Ford car on the center of its right side.* * * * The eastbound truck did not stop. * * * *The truck driver did everything he could to avoid the accident.* Ford pulled directly across the slab from south to north *and it appears to me that he was solely to blame for the accident.* The truck driver had sounded his horn, cut to the right, cut to the left and *applied his brakes. There was nothing else he could do.* I would estimate the speed of the truck when I

first saw it when it sounded his horn at about 28 to 30 miles per hour.''

Upon cross-examination, Melling read over the statement. He was then asked if he desired to change his testimony about ''the sounding of the horn and screeching of the brakes, or about another vehicle of some kind going'' east. He stated that, as to these matters, the statements in the exhibit were not correct and that the person who wrote out the statement did not ask him about them.

The exhibit consisted of three pages and was not in Melling's handwriting. Melling admitted his signature on the first page, was doubtful whether he had initialed the second and denied the signature on the third. Defendant's handwriting witness testified that, in his opinion, the initials and the second signature were made by the person who wrote the first signature.

After the court had examined the exhibit, plaintiff's counsel objected on the ground it had not been properly identified, and also because what Melling thought the truck driver saw, or could do, could not do or failed to do, were conclusions invading the province of the jury. The court then stated he would ''rule on it when it is offered.'' Then, in answer to specific questions of defendant's counsel, Melling denied that he had been asked by or stated to the person who wrote out the statement: that defendant sounded his horn, that there was another vehicle coming east, that when plaintiff drove across the pavement the truck was about 75 feet east, and that he heard the brakes screech immediately before the collision.

After submitting evidence tending to prove that the signatures and initials on the ▮▮▮▮ statement were Melling's, defendant offered the entire statement ''for impeachment purposes only.'' Plaintiff renewed his objections, specifically objecting to the portions of the statement (quoting them) that were opinions or conclusions of the witness. Plaintiff's counsel contended then, as they do now, that the exhibit should have been rejected because ''it contained opinions and conclusions of the witness which rendered it incompetent for use in impeachment.''

In overruling plaintiff's objections, the trial judge stated that the conclusion that ''the truck driver did everything he possibly could to avoid the accident,'' was admissible to impeach Melling's testimony that (quoting the court): ''In effect, yesterday, he said he (defendant) did everything he could. * * * In effect, that is what he testified to. I am admitting this because it is impeachment, I think.'' Plaintiff's counsel then asked: ''May it be understood that if it is read in evidence, that the plaintiff moves to strike out the statement, and particularly those parts to which we object,'' and the court stated, ''All right.'' Seemingly, this was intended by the court as an overruling of plaintiff's motion, even as to the

parts of the exhibit (italicized above) to which plaintiff objected. Defendant's counsel then read the entire statement to the jury.

Apparently, the trial judge was applying the rule followed in some jurisdictions, which is: If the broad statement of opinion contains an implied assertion of fact inconsistent with an assertion of fact made by the witness, it is admissible for impeachment purposes. See Wigmore On Evidence, 3rd Ed., Vol. III, Sec. 1041; and Greenleaf On Evidence, 16th Ed., Vol. I, Sec. 462a. This, however, is not the rule in Missouri. Bright v. Wheelock, 323 Mo. 840, 20 S. W. 2d 684; Sweeney v. K. C. Cable Ry. Co., 150 Mo. 385, 51 S. W. 682; McFadin v. Catron, 120 Mo. 252, 25 S. W. 506; and Hamburger v. Rinkel, 164 Mo. 398, 64 S. W. 104.

However, here, we are of the opinion that the error committed by the trial court in permitting the exhibit to be read in its entirety was not prejudicial and so does not require reversal. The exhibit contained four statements of *fact* inconsistent with statements of *fact* as to which he had testified, viz.: That he heard defendant sound his horn, that he had heard the truck's brakes screech, that the car was on the pavement when he first observed it, and that there was an eastbound truck. These prior inconsistent statements of fact (unquestionably admissible), impeaching as they did every *material fact to which the witness had testified,* were such as to make it highly improbable that the jury was influenced in any way by Melling's opinions and conclusions (as to what defendant saw, or tried or had to do, or as to which party was to blame) in determining the credibility of the witness and the weight to be given to his testimony as to *facts.* In considering Melling's testimony, the jury either believed what he said on the stand and that the exhibit did not impair the force of what he then said, or disbelieved what he testified to, not because of his previously expressed opinions, but because of his prior contradictory *factual* statements. If appellant's position (that the error was so prejudicial as to require reversal) is sound, we must make the unreasonable assumption that the jury disbelieved Melling's factual testimony, not because of his prior inconsistent *factual* statements, but because of his previously expressed *opinions.*

Furthermore, the error was cured by the giving of Instruction No. 6, requested by plaintiff, which was: "The court instructs the jury with respect to defendant's Exhibit C, the same being a statement in the handwriting of Mr. Claude McFarland, that said statement was admitted in evidence solely for the purpose of impeachment, if any, of the testimony of witness Robert Melling, and the contents of said statement cannot be considered by you in determining the issue of whether or not defendant Dahl was negligent at the time and place of the collision in question as submitted in other instructions herein, or whether or not Mr. Ford was negligent as submitted in

other, instructions herein, except insofar as it may impeach, if so, the testimony of Robert Melling in that respect.''

In State v. Davenport, 342 Mo. 996, 119 S. W. 2d 291, and State v. Warren, 326 Mo. 843, 33 S. W. 2d 125, we held the refusal to give a requested instruction (limiting to impeachment the probative value of prior inconsistent statements) was reversible error. But we have been unable to find a case where an appellate court of this state has held that the error of which appellant here complains was reversible where the trial court had given an instruction limiting the effect of the prior inconsistent statement to impeachment of the witness. In Hammond v. Schuermann Bldg. & Realty Co., 352 Mo. 418, 177 S. W. 2d 618, after verdict for defendant, a new trial was granted because of error in giving an instruction which told the jury that the prior statements of a witness ''must not be considered as evidence.'' We remanded that case with directions to reinstate the verdict. See also Johnson v. Minihan, 355 Mo. 1208, 200 S. W. 2d 334; Spicer v. Spicer, 249 Mo. 582, 155 S. W. 832; Dayton Fold. Box Co. v. Danciger, 161 Mo. App. 640, 143 S. W. 855; and Hitt v. Hitt, 150 Mo. App. 631, 131 S. W. 369. Here, the limiting instruction, as drawn and submitted by plaintiff, was given and we therefore rule against appellant on his first assignment.

 Appellant's next contention is that ''the combined effect'' of three of the instructions given at defendant's request ''unduly emphasized plaintiff's burden of proof and that their combined giving was prejudicially erroneous.''

In Instruction 8 (the converse of Instruction 1, plaintiff's main instruction), the jury was told that it could not find for plaintiff unless he had proven ''by the preponderance or greater weight of the credible evidence'' that after defendant knew or should have known of plaintiff's imminent peril defendant could have prevented the collision, and that ''unless you so find from a preponderance of all the credible evidence'' plaintiff could not recover. In Instruction 11, the jury was told that plaintiff must prove ''by a preponderance, that is, the greater weight of the credible evidence,'' that ''defendant was negligent in the respects set out in'' Instruction 1 and that ''such negligence, if any, directly caused plaintiff's injury''; and ''unless plaintiff has so proven by a preponderance of all the credible evidence,'' the verdict must be for defendant on plaintiff's petition. In Instruction 12 the jury was told that plaintiff's claim was based on negligence and that recovery on a charge of negligence could not be had ''except when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence''; that defendant was not required to disprove the charge and that the charge ''must be sustained by the preponderance, that is, the greater weight of the credible evidence''; and that if the jury found the evidence as to defendant's negligence ''as submitted

in these instructions does not preponderate in favor of plaintiff or is equally balanced," then the verdict should be for defendant on plaintiff's petition.

These instructions set forth defendant's theory of the case and we cannot see that, when read with the other instructions, they either placed upon plaintiff an improper burden of proof or unduly emphasized that burden or misled the jury to plaintiff's prejudice. Mueller v. Schien, 352 Mo. 180, 176 S. W. 2d 449; Pearrow v. Thompson, 343 Mo. 490, 121 S. W. 2d 811; Ostmann v. Ostmann (Mo. Sup.), 183 S. W. 2d 133; and State ex rel. Kansas City v. Shain (Mo. Sup.), 177 S. W. 2d 511. See also Piburn v. Reed (Mo. App.), 193 S. W. 2d 789.

Appellant cites Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. 2d 58; Mitchell v. Dyer (Mo. Sup.), 57 S. W. 2d 1082; Miller v. Williams (Mo. Sup.), 76 S. W. 2d 355, and Fantroy v. Schirmer (Mo. App.), 296 S. W. 235. In both the Rouchene and Mitchell cases we considered the propriety of a single burden of proof instruction; in neither was repetition involved. Of the Miller case (wherein we had stated that an instruction not set out in the opinion "also unduly emphasized the burden of proof by giving two instructions on the subject"), we later said: "We are of the opinion that the court did not intend by the latter sentence to rule the giving of two instructions on the burden of proof, without more, was reversible error. In that case the judgment was reversed and the cause remanded, but other error was pointed out which was expressly held prejudicial. Furthermore, that decision is not our latest one on the subject." State ex rel. Kansas City v. Shain, supra.

In the Fantroy case the Court of Appeals held that three separate instructions on the burden of proof unduly emphasized that burden and were improper. Both the Miller and the Fantroy cases were considered by this court in Mueller v. Schien, supra. We there stated: "The matter of repetition or elaboration of the same proposition in instructions is generally considered to be within the discretion of the trial court and not to be reversible error when not considered so by the trial court. Wells v. City of Jefferson, 345 Mo. 239, 132 S. W. (2d) 1006, 1009. Furthermore, mere repetition in instructions does not ordinarily constitute a ground for reversal. * *. * The giving of repetitious instructions will not constitute reversible error unless it plainly appears that they were in fact calculated to confuse and mislead." See also Ostmann v. Ostmann (Mo. Sup.), supra, wherein we also discussed the Miller and Fantroy cases.

In our opinion, the repetitions here did not unduly emphasize plaintiff's burden of proof and we rule this point against appellant. Morris v. E. I. Du Pont de Nemours & Co., 351 Mo. 479, 173 S. W.

2d 39; Mueller v. Schien, Piburn v. Reed, Ostmann v. Ostmann, and State ex rel. Kansas ·City v. Shain, supra.

Appellant next asserts that Instruction 11, given at defendant's request, is erroneous. This instruction required the jury to find that "defendant was negligent in the respects set out in Instruction numbered 1 herein." Instruction 1 (plaintiff's main instruction) submitted, in the disjunctive, three separate elements of 'negligence on the part of defendant causing the collision, viz.: Failure to stop, failure to slacken speed and failure to change his course of travel. Appellant argues that Instruction 11 required the jury to find defendant negligent as to *all three*; and that "the instruction should have read 'negligent in *any* of the respects set out in instruction numbered 1 herein.' "

We note that in his Instruction 3, plaintiff twice refers to defendant's negligence "as submitted in Instruction No. One." Yet he questions the propriety of defendant making the same reference to his (plaintiff's)' own instruction for the three disjunctively alleged acts of negligence.

Instruction 11 clearly told the jury that unless it found that "defendant was negligent in the respects set out in instruction numbered 1 herein," plaintiff could not recover. Conversely, it implied that plaintiff could recover "if defendant was negligent in the respects" of *either* failing to stop *or* failing to slacken speed *or* failure to change his course of travel. We see nothing erroneous in defendant referring to plaintiff's own, and main, instruction in which plaintiff himself not only set out the alleged three alternate acts of negligence upon which he relied, but set them out disjunctively in accordance with his theory of his ·case.

We agree with appellant that the authorities in respect to this matter are not numerous, but not with his assertion that this lack of precedent is due to "the elementary error in Instruction No. 11." See Lindquist v. K. C. Pub. Serv. Co., 350 Mo. 905, 169 S. W. 2d 366. Appellant cites Meeker v. Union Elec. Lt. & P. Co., 279 Mo. 574, 216 S. W. 923, and Roemer v. Wells (Mo. App.), 257 S. W. 1056, neither of which is applicable here. In both, the erroneous instruction did not refer to another instruction, but recited the alleged acts of negligence. (In the Roemer case, it referred to acts of negligence "as above specified and as above set out" in the same instruction.) In both, the erroneous instruction expressly required the jury to find that the defendant was negligent of *all* the acts of negligence alleged, whereas plaintiff was entitled to a verdict if he proved his case as to *any one*. Here, Instruction 11 and Instruction 1, read together, did not require plaintiff to prove all three of the alleged acts of negligence, but entitled him to a verdict if he proved any one of them. We rule this point against appellant.

■ Appellant's last assignment is directed to the concluding sentence of the instruction relating to the credibility of the witnesses: "If, upon consideration of all the evidence, you conclude that any witness ■ has sworn wilfully falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness' testimony." An identical instruction was approved by this court in State v. Sloan, 309 Mo. 498, 274 S. W. 734. See also Raymond, Mo. Inst. Juries, Sec. 10423. In State v. Willard, 346 Mo. 773, 142 S. W. 2d 1046, we analyzed "falsus in uno, falsus in omnibus" instructions and said the particular instruction was "not perfect," and in Hamre v. Conger, 357 Mo. 497, 209 S. W. 2d 242, we criticized the instruction then before us. However, in both cases, we declined to reverse the judgment because the instruction had been given. See also 90 A. L. R., l. c. 82, as to the "Missouri rule" in this matter. We believe the giving of this instruction was not reversible error here and rule this point also against appellant.

The judgment, therefore, is affirmed. *Van Osdol* and *Aschemeyer, CC.*, concur.

PER CURIAM:—The foregoing opinion by LOZIER C., is adopted as the opinion of the court. All the judges concur.