Jewell Morris, Appellant, v. E. I. Du Pont de Nemours and Company, a Corporation, and Martin Raithel.—No. 38123.—173 S. W. (2d) 39.

Division One, July 6, 1943.

Rehearing Denied, July 20, 1943.

*Max G. Baron, J. Edward Gragg, David Baron* and *Raymond M. Freed* for appellant.

480

*Jones, Hocker, Gladney & Grand, Lon O. Hocker, Abel Klaw* and *Lon O. Hocker, Jr.,* for respondents.

HYDE, J.—This is an action for $100,000.00 damages for personal injuries resulting from premature explosion of dynamite in a clay mine. Defendants' answer was a general denial and a plea of contributory negligence. The jury found for defendant and plaintiff has appealed.

This is the third appeal in this court. [Morris v. E. I. Du Pont de Nemours & Co., 341 Mo. 821, 109 S. W. (2d) 1222 (first appeal): 346 Mo. 126, 139 S. W. (2d) 984. [41] (second appeal.)] The facts are fully stated in our former opinions and reference is made thereto for the facts. [See also Morris v. E. I. Du Pont de Nemours & Co., 68 Fed. (2d) 788.]

Plaintiff's claim is summarized [139 S. W. (2d) l. c. 986] as follows: "That the dynamite had been purchased from the Du Pont Company who manufactured it; that Raithel, as the employee of the Du Pont Company, had charge of mixing the explosive element, nitroglycerin, with the nonexplosive matter used in the manufacture of the dynamite; that defendants were careless and negligent in unevenly mixing the various elements so that some of it contained too much of the explosive matter and was likely to, and did, explode with slight friction and prematurely; and that the premature explosion which caused plaintiff's injuries was directly due to said negligence."

Plaintiff now assigns error in instructions given by the court at the request of defendant, as follows:

"Instruction No. 6.

"The court instructs the jury that if you find from the facts, and circumstances in evidence that the explosion mentioned in the evidence was caused by the blasting cap used to explode the dynamite being so insecurely placed or fastened in the dynamite that it became loosened and free in the drill hole, and that the explosion of the dynamite was caused by the premature detonation of the blasting cap,

and not by reason of improper mixture of the dynamite, then plaintiff cannot recover against either of the defendants, and your verdict must be in favor of both defendants.

"Instruction No. 7.

"The court instructs you that it is your duty in considering the evidence, deliberating upon and determining the facts in this case to first decide upon the question as to whether, under all the facts and circumstances, there was or was not any negligence upon the part of the defendants in the mixing of the dynamite in question. Until and unless you determine there was such negligence, you should not give consideration to the amount, if any, plaintiff may be entitled to recover because of his injuries.

"It is your duty to come to a conclusion upon all those facts, and the effect of all those facts, the same as you would conscientiously come to a conclusion upon any other set of facts that would come before you in life. There is no technical rule; there is no limitation in courts of justice that prevents you from applying to them (the facts and circumstances in evidence) just the same rules of good common sense, subject always, of course, to the conscientious exercise of that common sense that you would apply to any other subject that came under your consideration and that demanded your judgment. Neither passion, prejudice or sympathy for or against plaintiff or defendants should influence you in any manner in deciding this case.

"Instruction No. 8.

"The court instructs the jury that the happening of the explosion carries with it no presumption of negligence on the part of the defendants; and it is an affirmative fact for the plaintiff to establish. It is not sufficient for the plaintiff to show only that the defendants may have been negligent; the evidence must point to the fact that they were. And if the evidence equally shows to your minds that any one of several unrelated and disassociated things may have brought about the explosion, for some of which the defendant may be responsible and for some of which it is not, it is not for you to guess as between these several causes and from such guess alone find that the negligence of the defendants was the real cause, but in that event your verdict must be for the defendants."

Defendants again urge their demurrer to the evidence. However, this has twice been ruled and, because of the view we take of the assignments of error now made, it is unnecessary to consider it again.

Plaintiff contends as to Instruction No. 6 that it was misleading and confusing and that there was no evidence to support it. We find no merit in this contention. Defendants' affirmative defense like plaintiff's case was based on circumstantial evidence. Both had expert witnesses to give the jury the benefit of their opinions as to the reasonable inferences to be drawn from the facts and circumstances

in evidence. The jury, at this trial as well as at the first trial, found against the conclusions of plaintiff's experts. From a careful reading of the whole record, it appears to us more reasonable to believe that the explosion resulted from the negligence submitted in Instruction No. 6 than from that alleged by plaintiff.

Defendants had substantial evidence to show that the method of loading used by plaintiff was unsafe. Defendants' witness Sumner, whose work was instruction in safe methods, testified that there were only two safe ways of priming a dynamite cartridge, called end priming and side priming. In each the fuse was to be tied to the cartridge with string. Printed instructions with illustrations of how to place and tie the fuse were in every box. Plaintiff did not do this but only put the cap in the end of the cartridge, without tying it, bent the fuse around the end and pushed the cartridge into the hole with a stick in his right hand while holding the fuse taut with his left hand. Sumner said of this method: "Once the miner puts his tamping stick against that (the cartridge) he had lost control and the cap has nothing to hold it in there." Defendants' witness, Corbett, mine superintendent of long experience, corroborated Sumner's testimony as to safe methods of priming, and said: "If the cap is out there is danger of an explosion. The cap is more explosive than the dynamite, it propagates explosion, that is what it is for." Defendants' witness Forbes, Professor at Rolla School of Mines, likewise corroborated Sumner's testimony as to proper methods, and testified: "Q. And why is it unsafe for the cap to be unfastened to the cartridge? A. Well, if the cap should come out and to be pinched against the side of the drill hole with a tamping stick it might explode. Q. You say the cap might explode if it were pinched against the side of the drill hole with a tamping stick? A. Yes, entirely possible. Q. How do you know that is possible? A. Well, I know that we have premature explosions which can be attributed to that. I have made experiments with caps to see how easily they were set off. . . . in my opinion something caused that cap to go off; I don't know what. I don't know what caused it to go off; something caused the cap to go off and the cap caused the dynamite to go off." (This is the opposite of plaintiff's theory that the dynamite itself exploded from shock or friction.) We hold that this testimony, considered together with the physical facts and natural laws, constitute a sufficient basis to support Instruction No. 6.

Plaintiff makes several specific criticisms of the language used in Instructions No. 7 and No. 8. (As to Instruction No. 7 that it authorizes the jury to decide the case without regard to the weight of the evidence.) (As to Instruction No. 8 that it tends to cause the jury to believe that all of the evidence must show defendants' negligence; that it contains abstract statements of law; that it is so complicated and involved as to be misleading and confusing with respect

to the burden of proof; and that it prevents the jury from finding upon the probabilities of the evidence that defendants were negligent.) Plaintiff also says that in combination these instructions "constitute a misleading, ambiguous and repetitious lecture to the jury." They are both really cautionary instructions. The rules concerning cautionary instructions are as follows:

(a) Parties are not entitled to them as a matter of right so that it is not reversible error to refuse them.

(b) The trial court has discretion, in the first instance, to determine whether the case is one in which they should be given at all and if so to determine the proper kind and number.

(c) They should be given with caution and repetition should be avoided. (We also suggest caution in requesting them.)

(d) The trial court, having had the parties, witnesses and jurors before it and observing the whole atmosphere and conduct of the trial, is in the best position, after the trial, to determine whether there has been any misleading, confusing and prejudicial effect from them.

(e) Unless they state an incorrect or inapplicable rule of law, or unless there appears to have been an abuse of discretion by the trial court, appellate courts do not order reversals because of them except under most unusual circumstances.

(f) Because of the discretion vested in the trial court and its superior position to pass upon the matter, appellate courts will usually defer to the findings of the trial court concerning their prejudicial effect on such grounds as abstract generality, overemphasis, or confusing or misleading statements; therefore affirming an order granting a new trial when the trial court grants it on that ground or affirming the judgment when the trial court has found against such ground by overruling a motion for new trial. [Lewis v. Zagata, 350 Mo. 446, 166 S. W. (2d) 541; Dove v. Atchison, Topeka & Santa Fe Ry. Co., 349 Mo. 798, 163 S. W. (2d) 548; Mendenhal [43] v. Neyer, 347 Mo. 881, 149 S. W. (2d) 366; Williams v. Guyot, 344 Mo. 372, 126 S. W. (2d) 1137; Gardner v. Turk, 343 Mo. 899, 123 S. W. (2d) 158; Clark v. Reising, 341 Mo. 282, 107 S. W. (2d) 33; Oliver v. Morgan (Mo. Sup.), 73 S. W. (2d) 993; Larey v. M.-K.-T. R. Co., 333 Mo. 949, 64 S. W. (2d) 681; Wolfson v. Cohen (Mo. Sup.), 55 S. W. (2d) 677.] We think the proper administration of justice can be best accomplished by following these rules. We, therefore, refer to the action of the trial court in overruling plaintiff's motion for new trial, which disposes of plaintiff's contentions as to abstract, repetitious and complicated language used and the confusing or misleading effect of the instructions singly or in combination.

Plaintiff further contends that Instruction No. 7 permits the jury to determine for itself the law of the case and that Instruction No. 8 incorrectly states his burden of proof. This criticism of No. 7 is made against the first sentence of the second paragraph. ("It is

your duty to come to a conclusion upon all those facts, and *the effect of all those facts.*'') Plaintiffs argue that this means the legal effect of the facts as to defendants' liability. We do not think it is reasonable to say that the jury would so understand this clause because they had been definitely and specifically told what facts they must find to reach a verdict, in Instruction No. 1 authorizing a verdict for him, and in defendants' Instruction No. 6 authorizing a verdict for it. Instructions hypothesizing the facts which must be found, before a verdict for a party is authorized, state the law of the case for the jury. (Dorman v. East St. Louis R. Co., 335 Mo. 1082, 75 S. W. (2d) 854.) It seems unreasonable to assume that the jury would believe from the italicized words that they could disregard the law of the case, so completely and specifically stated to them, and decide on a verdict without finding the facts which they were directed they must find in order to reach it.

Here plaintiff's case was based solely upon circumstantial evidence. Therefore, the jury could only find some of the facts, hypothesized in plaintiff's main instruction and essential to a verdict in his favor by making inferences from the facts and circumstances in evidence. Thus the jury did have the duty to come to a conclusion upon ''the effect of all those facts'' to warrant such inferences as plaintiff urged them to make. Plaintiff had given the jury the evidence of experts as to their conclusions upon ''the effect of all those facts'', and the most vital controversy in the case was whether they should accept the views of plaintiff's experts as to their effect or take those of defendants' experts. We think this is what the instruction meant and that the jury would so understand it. This part of the instruction was approved by the United States Supreme Court, in Dunlop v. United States, 165 U. S. 486, 17 S. Ct. 375, 41 L. Ed. 799, saying, ''To construe these instructions as authorizing the jury to depart from the rules of evidence, and to decide the case upon abstract notions of their own, or from facts gathered outside of the testimony, is hypercritical.'' We do not feel it would be ''common sense'' to so construe it, but think it is much more reasonable to consider that the jury would understand it to refer to the matter of coming to a conclusion upon the inferences to be made from circumstantial evidence. If plaintiff's counsel felt it needed such explanation they could have asked for a clarifying instruction.

Plaintiff's further claim as to Instruction No. 8 is that it improperly places upon him a too great a burden of proof. This is based principally upon the use of the word ''establish''. Plaintiffs cite such cases from other states as Endowment Rank of Order of K. P. v. Steele (Tenn.), 63 S. W. 1126; Jones v. Monson (Wis.), 119 N. W. 179; and Hurzon v. Schmitz, 262 Ill. App. 337, in which the use of the word ''establish'' was condemned. Defendant also cites cases from other states holding that this is not prejudicial, considering the charge

as a whole. [Jager v. First National Bank (Conn.), 7 Atl. (2d) 919; Houston & T. C. R. Co. v. Johnson (Tex.), 127 S. W. 539.] In Southern Express Co. v. Roseman (Ala.), 91 So. 612, the Alabama Supreme Court considered "establish" to be a milder term than "prove." However, in the Jager case, the Connecticut Supreme Court said: " 'Prove' is the better word to use, but 'establish' is not uncommonly used in the same sense." Plaintiff relies principally upon State v. Davis, 342 Mo. 594, 116 S. W. (2d) 110. This court there discussed various dictionary definitions of the term, but held that it was too strong a word as used in the instruction [44] in that case. However, this court was there considering a criminal case in which the state's instruction required the defendant to establish the facts constituting reasonable cause for self defense and directed that the defendant could not be acquitted unless he had established them. This was in conflict with State v. Malone, 327 Mo. 1217, 39 S. W. (2d) 786, which had overruled the cases indicating that "the burden rests upon the defendant to prove any affirmative matter" in a criminal case. The effect of the instruction was to put the burden of proof on the wrong party, and thus relieve the state of its burden to prove the defendant guilty beyond a reasonable doubt. This would be erroneous even though requiring of defendant only a preponderance of the evidence. In two Missouri civil cases the use of "estalish" has been held not prejudicial. [Fries v. Royal Neighbors of America (Mo. App.), 210 S. W. 130; Lindquist v. K. C. P. S. Co., 350 Mo. 905, 169 S. W. (2d) 366.] Here the sentence using "establish" was followed by one which only required that "the evidence must point to" defendants' negligence. Moreover, the burden of proof was herein properly stated to the jury in Instruction No. 3, as follows:

"The Court instructs the jury that while the plaintiff is required by law to prove the case by the greater weight, or preponderance, of the evidence, the question as to where the greater weight, or preponderance, of the evidence lies is to be determined by the jury upon a fair and impartial consideration of all the facts and circumstances in evidence in the case.

"The Court further instructs you in that connection that if you find and believe from the evidence that the evidence in this case preponderates in plaintiff's favor, this would be sufficient to sustain such burden of proof."

Instead of conflicting with Instruction No. 8, as plaintiff contends, Instruction No. 3 we think supplemented, qualified and explained it. Furthermore, as we construe Instruction No. 8 it only stated who had the burden of proof and cautioned against decision by a guess; but it did not instruct as to what the burden of proof was. Instruction No. 3 was the only one which did instruct on that point and it clearly and correctly covered it. Reading all of the instructions together, as we must do where there is no conflict, we find no mis-

direction or incorrect statement and we rule that these instructions cannot properly be held prejudicially erroneous.

Plaintiff also assigns error on rulings on evidence as follows: Overruling plaintiff's motion to strike a part of the cross-examination of defendants' witness Corbett; and refusing to permit counsel ·for plaintiff to use a textbook in cross-examination of defendants' expert witness, Wilson. As to the latter there is no exception in the record to any ruling, and in fact no final ruling. As to the former, plaintiff's counsel cross-examined defendants' witness Corbett, at length, concerning his testimony that plaintiff used an unsafe method in placing the dynamite without tying the cap, finally asking this question: "Q. You never saw an accident happen while it was being handled that way?" The witness answered that he had and on further questioning told where it occurred. The examination continued thus: "Q. Were you present when that happened? A. No, I was very close, though. Q. Then, what you know about the method—did you see the hole being loaded that way? A. No, I seen a person that told me; I didn't actually see it. Q. You only know that by hearsay? A. I know that by hearsay; that is exactly it; I didn't see it. Mr. Stout: I ask that that be stricken out and the jury instructed to disregard it. The Court: Objection will be overruled. Motion will be overruled. To which ruling of the Court plaintiff, by counsel, then and there duly excepted." Clearly there was no specification as to how much of this cross-examination was to be stricken. Plaintiff now says the error was "in refusing to strike out upon objection by appellant hearsay testimony of defendants' witness that another accident had resulted from the use of the same method of loading a drilled hole as appellant was using when he was injured." It is obvious that no such ground was stated to the trial court. Moreover, it was plaintiff's counsel who brought out the answer that this witness saw such an accident, and he could have seen it without seeing the hole being loaded before the accident. While plaintiff might have been entitled to some action by the court upon a proper request, this record shows no ruling of which he may complain.

The judgment is affirmed. All concur.