Bertie E. RITTERSHOUSE et al.,
Plaintiffs-Respondents,

v.

CITY OF SPRINGFIELD, Missouri, a
Municipal Corporation, Defendant-
Appellant.

No. 46552.

Supreme Court of Missouri,

Division No. 1.

Jan. 12, 1959.

John B. Newberry, Don G. Busch, Springfield, for appellant.

Walker, Daniel, Clampett, Rittershouse & Ellis, Springfield, for plaintiffs-respondents.

VAN OSDOL, Commissioner.

This is an action in two counts by plaintiffs Bertie E. Rittershouse and her husband Paul L. Rittershouse for the aggregate of $22,500 damages for the wife's personal injuries and the husband's loss of the wife's services which injuries allegedly were sustained when plaintiff wife stepped from the curb and fell on the crosswalk at the southeast corner of the intersection of St. Louis Street and South Avenue on the Public Square in Springfield. Plaintiffs' claim was stated on the theory of defendant City's negligence in permitting the public street to become and remain in a dangerous and unsafe condition. The jury returned a verdict for defendant. But the trial court sustained plaintiffs' motion for new trial on the specified grounds of errors in giving defendant's Instructions Nos. 6 and 6½. Defendant has appealed from the new-trial order.

Before examining defendant's contention that the trial court erred in granting a new trial, we think it helpful to state some of the evidence introduced in the trial of the cause.

South Avenue, a north-south street, intersects east-west St. Louis Street on the public square at Springfield. Square parking areas or "islands," including sidewalks eight feet wide flanking both sides of the two streets, are at all four quadrants of the intersection and extend along the streets for distances of approximately seventy-seven feet from the intersection.

On the day she was injured, plaintiff wife (hereinafter referred to as plaintiff) had driven to the public square. She parked her automobile east of but near the intersection and walked westwardly on the sidewalk along the south side of St. Louis Street north of the southeast parking "island." As she approached the curb at the southeast corner of the intersection, plaintiff saw that the traffic control device displayed a green light for traffic westwardly across South Avenue. Northbound automobiles were "lined up" on her left awaiting the change of the traffic light for movement of traffic northwardly across St. Louis Street. Plaintiff started to step off the curb and when she was "halfway stepping down as it (the traffic light) changed, as I had started to step when it was green, and glanced back up and it changed to caution." She "pulled my step back"— "Well, I had started across the Square, and I came to the stop lights; the signal was green, and I looked up at it, as you will when you go to cross a street, naturally, and sort of glanced to where I was going to step, and then back up at the stop signal, and the cars were lined up ready to go across the Square. And as I glanced up, the signal turned caution, and rather than step out in the line of traffic, I pulled my step back some so I wouldn't step so far out, and stepped on this raised place in the asphalt. It was quite rough, and extended out far enough for me to step on it in a way as to throw me out into the street, and I fell forward, and out into the street, * * *."

The "raised place in the asphalt" to which plaintiff referred was of irregular height from one and three-fourths inches to two and a half inches and extending and curved across the east-west crosswalk at a distance "all the way from two and a half to three and a half inches" from the curved curb at the southeast corner of the intersection. The raised place consisted of asphalt pushed up at the "expansion joint" between the pavement and curb.

Plaintiff sustained a chipped fracture of the navicular bone which likely was caused "by bending the foot too far down," that

is, the injury which plaintiff sustained was likely caused "by the toe being pulled down" —the foot would "have to go down, and in."

Defendant's Instruction No. 6 was as follows,

"Court instructs the jury that the mere fact that the plaintiff, Mrs. Bertie E. Rittershouse, was injured by a fall upon defendant's street is no evidence of itself that defendant was negligent in keeping its streets in a reasonably safe condition, but on the contrary, the plaintiffs must, by the evidence, show that the defendant was guilty of negligence as defined in these instructions and the burden of proof is upon the plaintiffs to establish such negligence by the greater weight or preponderance of the evidence." (We shall consider the instruction as if it more correctly used "failing to keep" instead of "in keeping.")

█ We think the instruction was prejudicially erroneous because we believe the instruction entirely excluded from the jury's consideration, in determining the issue of City's negligence, the fact that plaintiff was "injured by a fall" upon City's street.

Recently this court in Citizens Bank of Festus v. Missouri Natural Gas Co., Mo. Sup., 314 S.W.2d 709, 714, had occasion to discuss "mere fact" instructions of varying language. In the Citizens Bank case, the negligence charged was in the installation and servicing of a gas-heating unit in a furnace. The jury was instructed " 'that the mere fact of itself that there was a fire in the premises * * * is no evidence whatever that defendant was in fact negligent.' " The instruction was held to be clearly erroneous. The fact that there was a fire on plaintiff's premises and particularly a fire in the room where the furnace was located was an important circumstance to be considered in that circumstantial evidence case. But even in the instant case—not a true circumstantial evidence case—we believe it may not be correctly

said—in fact, we believe it to be absolutely untrue to say that the mere fact that plaintiff was "injured by a fall" upon City's street was *no evidence* of itself that defendant was negligent.

In this case we have noted the evidence that plaintiff stepped from the curb and upon the uneven ridge of asphalt and fell and sustained an injury which was said to be of such a nature as to have been occasioned by the foot being "pulled down * * * and in"—a likely result of a pedestrian stepping from the curb onto the uneven asphaltic ridge in the circumstances as detailed by plaintiffs' evidence. One of the factual issues was whether the uneven ridge rendered the street dangerous and not reasonably safe. This was a step in making the essential proof in invoking the consequent duty of City (having [timely] knowledge actual or constructive of the dangerous condition, in the exercise of ordinary care) to remedy the condition —and the failure to perform the duty would be negligence. Now, isolating and considering alone the shown mere fact of itself that plaintiff was injured by a fall upon the street from the other evidence we have summarized, supra, such mere fact alone, we think, supports a tenuous inference that the street because of some condition thereof was not reasonably safe; and, other evidence having been introduced tending to show a dangerous condition of the street causing plaintiff to fall, we believe the mere fact of itself that plaintiff fell could be correctly reached for by the jury as some evidence that the condition was dangerous and added to such other evidence, and the evidence altogether to be correctly considered by the jury in determining whether the shown condition rendered the street dangerous and not reasonably safe.

█ So we say that the mere fact of itself that a plaintiff has fallen on a street correctly should be said to be *some evidence* of negligence of a city in failing to exercise ordinary care to keep its streets in a rea-

sonably safe condition. To be sure the inference of a condition not reasonably safe thus tenuously indulged from the mere fact that one has fallen or "was injured by a fall" upon a city street is of insufficient substantiality to support a submission of the issue of negligence. But, although the mere fact of itself that one has been injured by a fall on a street is insufficient to support the inference of a city's negligence, we, nevertheless, again say the mere fact of itself is some evidence of a city's negligence, and we further say that an instruction excluding the jury's consideration of this fact as a circumstance to be considered on the issue of negligence in conjunction with the other shown facts and circumstances pertinent to the issue is prejudicially erroneous

It is possible that this court has not always been of this opinion. See Sharp v. City of Carthage, 319 Mo. 1028, 5 S.W.2d 6, 8, cited and relied upon by defendant, treating with Instruction "F" in material respects identical with Instruction No. 6. In deciding the Sharp case, it would seem this court thought that by force of the phrase "of itself" Instruction "F" *did not exclude* consideration of the evidence that plaintiff was injured by a fall, and that Instruction "F" should be read with plaintiff Sharp's verdict-directing Instruction VI which required the finding that plaintiff was "injured" by reason of the unsafe condition. · (And in our case plaintiff's principal verdict-directing Instruction No. 3 required the finding that plaintiff "fell * * and was injured.") As indicated, supra, we now believe that Instruction No. 6, although it contained the phrase "of itself," nevertheless excluded from the jury's consideration the fact that plaintiff "was injured by a fall." Citizens Bank of Festus v. Missouri Natural Gas Co., supra. We think the Sharp case inferentially has been overruled by the Citizens Bank case, supra; but we, nevertheless, shall further examine the Sharp opinion. As we have indicated this court in the Sharp case examined the instruction as if the "mere fact" of itself was the mere fact that plaintiff was *injured,* although the mere fact alluded to in Instruction "F" in the Sharp case (as in Instruction No. 6 here) was the mere fact that plaintiff "was injured *by a fall*" upon the street. We believe this court in the Sharp case should have particularly considered the incidence of the phrase "by a fall." In other words, this court in the Sharp case treated with the instruction as if it read (in the respects material here) as did Instruction No. 10 in LeGrand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706; and in some cases the mere fact of injury may not be evidence "of itself" that defendant was negligent. See now Manthey v. Kellerman Contracting Co., 311 Mo. 147, 277 S.W. 927, and Moss v. Wells, Mo.Sup., 249 S.W. 411, cited in the Sharp case, in which cited cases the mere fact alluded to in the questioned instructions was the fact that plaintiffs were "injured." Also see again LeGrand v. U-Drive-It Co., supra. But even if the Instruction No. 6 were interpreted as alluding only to the "mere fact that plaintiff was *injured,*" such an instruction in a given case may be misleading and erroneous because the character of the injury may be a material ·link in the chain of circumstances tending to show negligence. Orris v. ·Chicago, R. I. & P. R. Co., 279 Mo. 1, 214 S.W. 124. It is unnecessary in this case to pursue and consider such an interpretation of Instruction No. 6; but the decisions we have considered in our review of Instruction No. 6 manifest the hazard of error in giving any kind of a mere fact instruction in any kind of a negligence case. We, in passing, were looking at an instruction, "No. 8," in Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, 229, and said the instruction was argumentative and "the cautionary 'mere fact' unnecessary." By this we certainly were intending to say a cautionary "mere fact" is unnecessary in fairly and simply submitting the controverted factual issues of a negligence case.

 We now turn to defendant's Instruction No. 6½ which was as follows,

"The Court instructs the jury that before you may find for the plaintiffs in this action you must find that the crosswalk mentioned in the evidence was in a dangerous and defective condition and you must further find either that the defendant, through its officers and servants, had actual knowledge of such defective or dangerous condition for a period of time long enough that the defendant might reasonably have repaired the same in the exercise of ordinary care and caution, or you must find that such dangerous and defective condition was of such an obvious and notorious character and that it had existed for such a length of time that the defendant would, by the exercise of ordinary care, have known of the existence of the defective and dangerous condition."

The instruction treats with actual and constructive knowledge, and in advising the jury as to constructive knowledge the instruction is incomplete and erroneous.

Defendant has called our attention to the Instruction No. 12 (substantially the same as No. 6½ here) which was given in Barr v. Kansas City, 105 Mo. 550, 16 S.W. 483. In the Barr case plaintiff had verdict and judgment, and defendant appealed. Defendant Kansas City upon appeal was questioning plaintiff Barr's verdict-directing Instruction No. 1 as failing to require the jury's finding that defendant City had sufficient time after discovering the defect to repair it. This court said that if the Instruction No. 1 was not as explicit as it might have been in this particular, the Instruction No. 12 given at defendant's instance made it as explicit as defendant desired it to be. Of course, this court in the Barr case was not considering any contention of error in giving Kansas City's Instruction No. 12.

Assuming the Instruction No. 6½ is not susceptible to criticism in the use of the language "obvious and notorious," we think constructive knowledge of a dangerous and defective condition was not to be correctly limited in this case to a supposed "obvious and notorious" dangerous and defective condition; rather do we think there is also liability of a city for a condition of its street not reasonably safe where the dangerous and defective condition is of such nature, even though not "obvious and notorious," and has existed for such a length of time that the city in the exercise of ordinary care could and should have discovered and remedied it. Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045; Glenn v. City of Springfield, Mo.Sup., 254 S.W.2d 632; O'Gorman v. Kansas City, 233 Mo.App. 124, 93 S.W.2d 1132.

Plaintiff (respondent) in supporting the new-trial order contends further errors in other instructions given by the trial court at defendant's request. This opinion will not be extended by a review of these further contentions. The contentions of error in instructing the jury, not reviewed in this opinion, may be considered by the trial court and by counsel and the errors, if any there be, may be avoided upon retrial.

The trial court's order granting plaintiff a new trial should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.