Arthur PAIGE, Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, and Terminal Railroad Association of St. Louis, a Corporation, Respondents.

No. 46789.

Supreme Court of Missouri,

Division No. 2.

April 13, 1959.

Motion for Rehearing or to Transfer to Court En Banc Denied May 11, 1959.

Sherman Landau, St. Louis, for appellant.

Thompson, Mitchell, Thompson & Douglas, Harold I. Elbert, St. Louis, for respondent, Missouri Pacific R. Co.

Robert C. Ely, St. Louis, for respondent, Terminal R. R. Ass'n of St. Louis.

STOCKARD, Commissioner.

Appellant sustained personal injuries when an automobile operated by him was struck at a public crossing in East St. Louis, Illinois, by a train of the Missouri Pacific Railroad Company (hereafter referred to as Missouri Pacific) which was being operated on tracks belonging to Terminal Railroad Association of St. Louis (hereafter referred to as Terminal). The jury returned a verdict in favor of both defendants, and appellant has appealed from the judgment entered thereon.

Two sets of railroad tracks owned by Terminal intersect Market Avenue, an east-west street, at approximately right angles. On the morning of June 26, 1956, the streets were wet from a recent rain and appellant approached the crossing driving west on Market Avenue at 20 to 25 miles an hour. His view to the north down the railroad tracks was partially obstructed by a house, referred to in the evidence as the Haymore house, which was located approximately 38 feet north of the north curb of Market Avenue, and 34 feet east of the east rail of the tracks on which the Missouri Pacific train was traveling. There was considerable dispute in the evidence concerning the effect on appellant's ability to see an approaching train by reason of what appellant calls a tree, but which has the appearance in photographs to be a cluster of elm sprouts eight to ten feet tall and located immediately west of the Haymore house. As plaintiff approached the crossing he slackened the speed of his automobile to 15 or 20 miles an hour. Appellant testified that because of the "scrubbery" and an automobile parked in the Haymore driveway "I couldn't see nothing. I didn't hear nothing. I stopped." He later qualified this by stating that he was "right at the Haymore house, about in front of it when I hit my brakes," but that he "didn't stop dead still. I stopped long enough to know, see if anything was coming." When he, as distinguished from the front of his automobile, reached a position 28 feet east of the eastern rail of the tracks on which the train was traveling, he saw the engine of the train for the first time. It was traveling ten to twelve miles an hour, and appellant's automobile was moving ten or fifteen miles an hour, or a little less than that. The sudden appearance of the train scared him, and he did not apply his brakes. The train struck the right side of his automobile.

Appellant submitted his case as to Missouri Pacific upon the failure to sound warning signals, and as to Terminal upon the failure to provide adequate protective

devices at the crossing. On this appeal he first contends that "The trial court erred in denying plaintiff the right to introduce evidence of numerous other accidents at the grade crossing in issue for the purpose of proving the hazardous character of the crossing, and therefore the need for adequate protective devices at the crossing."

Jacob Christian, a sergeant on the East St. Louis police force and appellant's witness, was asked on direct examination if he had had "experience with accidents at this particular intersection within a period of a few years prior to June 1956." Objection was made, and after a colloquy the trial court permitted an examination of the witness out of the presence of the jury. On this examination in response to questions by appellant's counsel Sergeant Christian testified that there had been "about four or five accidents in the last five years there." On cross-examination he stated that he had no personal knowledge of the accidents, except one, and that his information was obtained by reading police reports. As to the one accident of which he had personal knowledge, he stated that a brakeman was injured, apparently when a switch engine was backing up and a collision with an automobile resulted. He did not know the names of any of the parties or when or at what time of day the accident occurred, but he thought it was early in the morning. The trial court ruled as follows: "Now, I am not precluding you from anything in the future, from any other witness, but this testimony will not go in from this witness."

■■■ It is obvious that the trial court did not deny appellant the right to introduce evidence of other accidents occurring at the crossing, but that the court did no more than rule that the particular testimony offered was inadmissible, and in this respect the ruling was correct. The one accident of which Sergeant Christian had a limited personal knowledge was not shown to have occurred "under the same conditions at a given spot from the same

cause," Charlton v. St. Louis & San Francisco Railroad Co., 200 Mo. 413, 98 S.W. 529, 538, but even if it is contended otherwise, appellant did not offer to prove by Sergeant Christian that the one accident of which he had some personal knowledge had previously occurred, but that about four or five accidents had occurred, and his knowledge concerning the other accidents was purely hearsay. See also, Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562; Cameron v. Small, Mo.Sup., 182 S.W.2d 565; Blackwell v. J. J. Newberry Co., Mo. App., 156 S.W.2d 14, 20.

In connection with this point, appellant further asserts that when he sought on cross-examination to interrogate a witness of respondent Terminal concerning the frequency of accidents at the crossing, the court promptly sustained Terminal's objections and admonished plaintiff's counsel "Don't ask any more questions along that line." Appellant is less than candid in setting forth this contention. The record shows the following:

"Q. (By Mr. Landau) How many accidents have you investigated at that intersection in the last five years, Mr. Sanders?

"Mr. Ely: I object to that.

"A. It was the only one.

"Q. Were you called to that same intersection about four weeks ago? A. Yes.

"Mr. Ely: I will object to that, if the court please, and I will ask the court to declare a mistrial for that.

"The court: Come up.

"Mr. Elbert: Missouri Pacific joins in that.

"(Thereupon the following colloquy ensued among the court and counsel, at the bench, out of the hearing of the jury).

"The court: The court feels that that is a highly prejudicial question un-

der the circumstances, Mr. Landau. No, I am not going to declare a mistrial, but don't ask any more questions along that line, because I don't want to have to declare a mistrial."

The above excerpt from the record shows that the court directed the remark to questions concerning alleged accidents occurring over a year *after* the incident giving rise to this suit. Appellant makes no contention in his brief that questions of the witness along that line were proper.

Appellant's next point is that the trial court erred in denying him the right to introduce portions of his deposition which he contends were relevant to his cross-examination by respondents concerning other portions of the same deposition. A statement of what occurred is necessary.

Appellant testified that when he was driving west on Market Avenue an automobile was preceding him by about one-half block, and as that automobile approached the crossing "I saw his tail light go on, and he went on across." On cross-examination counsel for Terminal read to appellant from his deposition the following: "[Question] Did you look down the railroad tracks? Answer: I looked both ways. A car that was in front of me just crossed the track in front of me, and he didn't hit his brakes or nothing. I knowed there was nothing coming." When asked if he so testified on deposition, appellant stated that he could not "recall that answer," and that he did not make it. On redirect examination appellant then offered to show that subsequently in the same deposition he had made the following answers in reply to questions asked him: "[Question] He didn't change his speed in any way? [Answer] Well, when we got about the railroad track, I saw his brake light went on. Then he just went on across. [Question] About how long did you see his brake light on? [Answer] Just a flash. [Question] Just as though he hit it for a second and then he went on, is that right? [Answer] Then he went on." Upon objection by re-

spondents, the trial court stated that appellant had not admitted making the earlier statement read to him from his deposition, and for that reason he would not permit appellant to show his prior consistent statements.

We are of the opinion that the trial court ruled correctly on the objection. While it is true that evidence of prior statements of a witness consistent with his testimony at the trial may be offered for the purpose of rehabilitating the witness when he has been impeached by the showing of prior inconsistent statements, Piehler v. Kansas City Public Service Co., 360 Mo. 12, 226 S.W.2d 681; Gough v. General Box Co., Mo.Sup., 302 S.W.2d 884, appellant did not admit he made the alleged prior inconsistent statement, and respondents made no offer of proof that he did. The record shows no more than that appellant was asked if he had previously made the statement read to him and he said he had not. Therefore, appellant was not impeached in the sense necessary to authorize proof of prior consistent statements for purposes of rehabilitation. McElhattan v. St. Louis Public Service Company, Mo.Sup., 309 S.W.2d 591. Appellant relies only on Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469, where under circumstances different from that here it was held that a party may not arbitrarily limit the use of a deposition by introducing only those parts favorable to him, and that if he offers portions only, the other party may introduce other portions containing competent and relevant testimony. Respondents did not introduce in evidence any portion of the deposition. This case is not applicable.

Appellant next contends that the giving of instruction 5 was error, which in its parts here material was as follows: " * * you are instructed that if you find and believe from the evidence that plaintiff drove his automobile at approximately 15 miles per hour as he came close to the tracks and that he did not look to his right down the tracks until he had passed the last point

where at that speed he would have been able to stop his automobile before reaching the rails on which the train was running, and if you find that plaintiff was negligent in driving at that speed and in failing to look to his right while he could stop, and if you find that his negligence caused or directly contributed to cause the collision, then you are instructed that plaintiff cannot recover against either defendant upon his claim that both or either of them were negligent and upon any such claim your verdict shall be against plaintiff and in favor of each defendant."

Appellant first contends "there was no evidence as to the distance within which plaintiff's automobile could have been stopped on the wet street and under the existing conditions." He refers to his own testimony on direct examination where he was asked, "Do you have any idea within what distance you could have stopped on that wet street?" and he replied, "No, sir, I don't." But, on cross-examination appellant was shown a photograph of the area of the crossing, and the following questions were asked of him and he gave the following answers:

"Q. Now, in relation to anywhere on that picture, will you tell us where was the last place that you would have been able to stop before you reached the tracks, considering the speed you were going, and the condition of the brakes on your car?

"A. Well, right about the driveway I could have stopped completely there right at the track.

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. * * * The last place you would have been able to stop before you reached the tracks was when you were along even with the driveway into the Haymore house?

"A. Yes. Sir."

◼ Appellant had previously testified that the pavement was wet. We need not look for other evidence in the record to support the submission of ability to stop. The above was sufficient. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

◼ Appellant next contends that instruction 5 erroneously assumes that at such point where he could have stopped his automobile, the obstructions to his view would not have prevented him from seeing the approaching train. This is, in substance, the frequently made contention that when submitting as negligence the failure to look or to maintain a proper lookout it is prejudicially erroneous not to require the jury to find that by looking the person could have seen. There is no doubt but that in a well worded and complete instruction this requirement should be included. But, the question is whether as worded the instruction in this case constituted a misdirection or was misleading and confusing. In Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, under the factual situation of that case it was said: "In a primary negligence case it should be sufficient if a jury is authorized to find that a defendant was negligent specifically in failing to keep a proper lookout * * * and that such negligence directly caused plaintiff's injuries. * * * We think it unnecessary to submit the further hypothesis that by keeping a proper lookout defendant could have seen plaintiff." See also, Jenkins v. Wabash Railroad Company, Mo. Sup., 322 S.W.2d 788; Trzecki v. St. Louis Public Service Co., Mo.Sup., 258 S.W.2d 676; Lanio v. Kansas City Public Service Co., Mo.Sup., 162 S.W.2d 862, 866; Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, 693; Patton v. Hanson, Mo.Sup., 286 S.W.2d 829; Abernathy v. St. Louis Public Service Co., 362 Mo. 214, 240 S.W.2d 914. We are convinced that no jury would be caused to believe by this instruction that it could find that negligence in failing to look was the proximate cause of the collision if it found that by looking appellant could not have seen the approaching train.

In addition to the above, we think there is a more convincing reason why the failure to require specifically a finding that appellant could have seen the train at the last place where he could have stopped short of the tracks was not prejudicial error here. As above set out, appellant testified unequivocally that he could stop short of the tracks when he was at the Haymore driveway. He also testified that there was nothing to obstruct his view to the right except the Haymore house, the tree or "scrubbery" to the west of the house, and an automobile parked in the driveway. The only testimony was that the train was traveling ten to twelve miles an hour and that appellant was traveling ten to fifteen miles an hour, or possibly a little slower than that. When appellant was at the driveway he was approximately 34 feet from the tracks on which the train was traveling. Therefore, the train had to be in the neighborhood of 34 feet north of the intersection, or only a few feet farther away. Under appellant's own testimony, which is undisputed, for the train and his automobile to arrive at the crossing at the same time the train necessarily had to have been in appellant's unobstructed view when he was at the place he testified he could have stopped before reaching the tracks. A simple geometrical triangulation unquestionably establishes this. In addition, appellant was shown a photograph taken when the camera was located at substantially eye level of the operator of an automobile located near the middle of Market Avenue at the Haymore driveway. In the photograph a Missouri Pacific engine located 95 feet north of the center of the crossing is clearly visible and there is no obstruction by the house or "scrubbery," and the location of the driveway clearly shows that if an automobile was parked where appellant said it was it would not be in the line of vision. Appellant testified that "If I had been where the camera was, I could have saw that train;" that if the train "had been that far back, it never would have hit me;" that when he was at the driveway the train was closer to Market Avenue than shown in the photograph; and that when the train is closer to Market Avenue than shown in the photograph it is easier to see. It is true that appellant also testified that he "did not have a clear view to the north along the railroad tracks until he reached a point where the front part of his automobile was up to the east rail," but this testimony in the form of a conclusion is in such irreconcilable conflict with the undisputed physical facts that it should and must be totally disregarded. See East v. McMenamy, Mo.Sup., 266 S.W.2d 728, 731. Under these circumstances it was not prejudicial error for respondents to fail to require in instruction 5 that if by looking appellant could have seen the approaching train.

Appellant next assigns as error the giving of instruction 12 which was as follows: "The Court instructs the jury that the mere fact of itself that plaintiff was injured and has brought suit claiming that defendants were negligent is no evidence whatever that defendants were in fact negligent or that plaintiff was exercising ordinary care for his own safety. Negligence or that plaintiff was exercising ordinary care for his own safety are not in law presumed, but must be established by proof as explained in other instructions. Neither are you permitted to base a verdict entirely and exclusively on mere surmise, guesswork and speculation; and if upon the whole evidence in the case, fairly considered, you are not able to make a finding that defendants were negligent or that the plaintiff was exercising ordinary care for his own safety without resorting to surmise, guesswork and speculation outside of and beyond the scope of the evidence, and the reasonable inferences deducible therefrom, then it is your duty to, and you must, return a verdict for the defendants."

The first contention is that this instruction erroneously informed the jury that "the mere fact that plaintiff was injured was 'no evidence whatsoever' of defend-

ants' negligence, despite the fact that the happening of the *occurrence in issue* was properly for the jury's consideration on the issue of the hazardous nature of the crossing" (emphasis added). We think, or at least we shall assume, that the "occurrence in issue" supports a tenuous inference that the crossing was not reasonably safe, and if the first sentence of this instruction had been worded to refer to the mere fact of the occurrence in issue, it then would be within the rule of Rittershouse v. City of Springfield, Mo.Sup., 319 S.W.2d 518; Dill v. Dallas County Farmers' Exchange, No. 177, Mo.Sup., 267 S.W.2d 677; and Jones v. Kansas City, Mo.Sup., 243 S.W.2d 318. However, the instruction refers to the "mere fact of itself that plaintiff was *injured*," that is, the reference is to the ultimate result of injury, not to the "mere fact of itself" of the *collision* or the *occurrence in issue*, which would have been a reference to an essential part of the causation bringing about the injury. This distinction is clearly set forth in Citizens Bank of Festus v. Missouri Natural Gas Company, Mo.Sup., 314 S.W.2d 709. We consider the first part of the instruction in this case to be comparable to the instruction considered in Le Grand v. U-Drive-It Co., Mo.Sup., 247 S.W.2d 706, 712, where the court said that the instruction told the jury that " 'the mere fact *of itself* (and without more) that plaintiff was injured' is no evidence of negligence. It thus limits such statement to the mere fact (alone and of itself) that plaintiff *was* injured. It thus does not even infer that the nature or character of plaintiff's injuries may not be some evidence of negligence." We are of the opinion that the instruction in this case does not infer that the fact of the "occurrence in issue" may not be some evidence of negligence.

What we have said is not to be taken to mean that the statement in an instruction that "the mere fact of itself that plaintiff was injured" can in no event be prejudicial. It was stated in Rittershouse v. City of Springfield, supra at page 521, of 319 S.W. 2d that if the instruction in that case be

"interpreted as alluding only to the 'mere fact that plaintiff was *injured*,' such instruction in a given case may be misleading and erroneous because the character of the injury may be a material link in the chain of circumstances tending to show negligence. Orris v. Chicago, R. I. & P. R. Co., 279 Mo. 1, 214 S.W. 124." See also, Temple v. Samuel Cupples Envelope Co., 318 Mo. 280, 300 S.W. 265. But, the facts of this case do not place it within the rule announced in those cases. Also, what we have said is not to be taken as recommending the universal use of an instruction worded as in this case. Referring again to Rittershouse v. City of Springfield, supra, it was also said at page 521, of 319 S.W.2d that the decisions there reviewed "manifest the hazard of error in giving any kind of a mere fact instruction in any kind of a negligence case." It would be well for counsel contemplating the use of such an instruction to heed the advice given in Citizens Bank of Festus v. Missouri Natural Gas Company, supra, 314 S.W.2d at page 715, where appropriate language for such an instruction is set forth.

Appellant next contends that instruction 12 is prejudicially erroneous because it "advised the jury on presumptions, although presumptions are purely procedural and are for the court alone, not for the jury," and because it "required plaintiff to 'establish' his case, or to prove it beyond doubt, [which] is a higher burden than required by the laws of either Missouri or Illinois."

The answer to the first contention is found in West v. St. Louis Public Service Company, Mo.Sup., 236 S.W.2d 308, 312, where the court considered an instruction which was, for all practicable purposes, substantially identical with instruction 12, except that it did not contain the first sentence. It was there said: "The meaning of an instruction must be determined from its entirety and not by considering only isolated words or phrases. * * * When the instruction is so considered, it has this meaning: Negligence is not a presumption

of law but it must be proved as explained in other instructions. If, upon all the evidence in the case, including reasonable inferences to be drawn therefrom, the jury is unable to make a finding that defendant is liable, they are not permitted to go *outside* of and beyond the scope of the evidence and reasonable inferences drawn therefrom, and base a verdict for plaintiff entirely and exclusively upon mere surmise, guesswork and speculation. If this is the meaning of the instruction (and we think it is), it is a correct statement of the law, in abstract form, * * *." The West case was a res ipsa loquitur case, and of course if the instruction was proper there, it certainly was permissible in this case.

Appellant relies primarily on Johnson v. St. Louis Public Service Co., Mo.Sup., 237 S.W.2d 136, in support of his contention that it was error to advise the jury that the negligence of defendants "must be established by proof as explained in other instructions." In the Johnson case the instruction did not contain the qualifying phrase "as explained in other instructions," and the court distinguished it on the basis that it contained "no such qualification" as that contained in Morris v. E. I. Du Pont De Nemours & Company, 351 Mo. 479, 173 S.W.2d 39, which qualification was only to the effect that the evidence must "point to" the fact of negligence or that the evidence must "preponderate" on that issue. Here the instruction unequivocally qualified the use of the word "established" by specific reference to the burden of proof instructions, and although appellant contends that there were too many burden of proof instructions, he does not contend that they were erroneous in substance. We find no prejudicial error in the giving of instruction 12.

Appellant next contends that the trial court "erred in unduly emphasizing plaintiff's burden of proof by giving multiple and lecturing instructions thereon."

In addition to instruction 12, heretofore set out and discussed, the trial court gave a burden of proof instruction at the request of each defendant. Appellant argues that "the cumulative effect of the three instructions was to constitute a strong lecture to the jury on their duty to defendants and not as to their duty with the respect to the whole case." However, we note that plaintiff gave a separate burden of proof instruction as to each defendant and a general burden of proof instruction pertaining to contributory negligence, or a total of three such instructions. There is no question but that there were too many burden of proof instructions in this case, but when considered on the basis of numbers alone, respondents did not offend in this respect any more than appellant. " 'The matter of repetition or elaboration of the same proposition in instructions is generally considered to be within the discretion of the trial court and not to be reversible error where not considered so by the trial court. * * * The giving of repetitious instructions will not constitute reversible error unless it plainly appears that they were in fact calculated to confuse and mislead.' " Ford v. Dahl, 360 Mo. 437, 228 S.W.2d 800, 805; West v. St. Louis Public Service Co., supra. We do not think prejudicial error resulted to appellant on the basis that "multiple" burden of proof instructions were given at the request of respondents.

Appellant does not set out any reason why respondents' burden of proof instructions were prejudicial to him on the basis that they "lectured" the jury other than that there were three of them. The instructions are not unduly lengthy, and they are not comparable to those instructions criticized in Unterlachner v. Wells, Mo. Sup., 278 S.W. 79, and Ryan v. Burrow, 326 Mo. 896, 33 S.W.2d 928. But, as pointed out in Mendenhall v. Neyer, 347 Mo. 881, 149 S.W.2d 366, in those two cases the instructions were not held to be prejudicially erroneous on the basis that they lectured the jury. Every instruction, in one sense of the word, constitutes a "lecture" to the jury. Appellant has not demonstrated why these instructions were prejudicially erroneous as to him for that reason.

Appellant next complains of instruction 11 which was as follows: "The Court instructs the jury that by the words 'exercise of ordinary care for his own safety' as used in these instructions the Court means that degree of care which may be reasonably expected of an ordinarily prudent person in the situation of plaintiff at and just before the time the collision mentioned in evidence occurred, and in determining whether plaintiff was exercising ordinary care for his own safety you should take into consideration the fact that ordinarily prudent people know that railroad crossings are dangerous places and that a person approaching a crossing must approach the track with an amount of care commensurate with the known danger and that plaintiff was familiar with the crossing and the area surrounding the crossing." The specific objections to this instruction are that the "reference to 'known danger' is positively misleading as intimating to the jury that plaintiff was aware of the approach of the train," and the instruction is misleading in its "reference to plaintiff's familiarity with 'the area surrounding the crossing' and evades the crucial issue of obstructions to view at the crossing."

In support of his first objection appellant cites Wilson v. Terminal R. Ass'n of St. Louis, Mo.App., 121 S.W.2d 232, 238. In that case, which also pertained to a railroad crossing collision in Illinois, it was held that the trial court properly refused to give at defendant's request a verdict-directing instruction which stated that even though the jury found that the railroad was negligent in the respects charged by defendant, if it further found that as plaintiff approached the crossing she did not use such care and caution for her own safety as was commensurate with the "known danger" of such crossing and that her failure caused or contributed to her injury, then she was not entitled to recover. The court stated that the instruction was "uncertain in its reference to the 'known danger' of such crossing" because the chief

danger lay in the immediate approach of the train, which danger was, under plaintiff's evidence, unknown to her. But, the court did not hold that the instruction, if it had been given, would have been erroneous for this reason. In fact, the court held that defendant had given ten other instructions, that reference was made in three of them concerning the degree of care required of plaintiff, and that "This number of given instructions should have amply sufficed for the protection of defendant's rights, and the court should therefore not be convicted of error for having refused to encumber the record with still an additional instruction upon a phase of the case as to which the jury had already been instructed."

■■■ A motorist who is familiar with the existence of a railroad crossing, and appellant admitted that he was familiar with this one, is unquestionably charged with knowledge that a train may be on or approaching the crossing and that there is a certain amount of danger in crossing it. This instruction stated that ordinarily prudent people know that railroad crossings are dangerous places, and we agree, and also that a person approaching the crossing must use care "commensurate with the known danger," that is, the known danger that trains frequently are on or are approaching crossings. We agree that in the Wilson case and in this case the "chief danger" was that a train was in fact approaching, which appellant testified he did not know, but instruction 11 does not assume that plaintiff knew the train was coming. It simply and plainly, and we think correctly, told the jury that in determining whether appellant was exercising ordinary care for his own safety it should take into consideration that a person who knowingly approaches a railroad crossing must use an amount of care commensurate with the knowledge that railroad crossings are dangerous, which, of course, may be something less than the care to be exercised if he actually knows a train is approaching the crossing.

Appellant next objects to the phrase that "plaintiff was familiar with the crossing and the area surrounding the crossing." He contends that one of the issues was whether "plaintiff's range of vision as he approached the crossing was as narrowly restricted as shown by his evidence, or whether it was enlarged to the extent claimed by defendants." But, the instruction did not state or assume that appellant could or could not see the approaching train at any particular place. Appellant unequivocally testified that he was familiar with the crossing and the conditions there and that he had driven over it on hundreds of occasions. It is not reversible error to assume in an instruction that which is conceded, undisputed or uncontradicted by the evidence. Banks v. Koogler, Mo.Sup., 291 S.W.2d 883, 891. Appellant conceded that he was familiar with the crossing, and this is all that the instruction said.

The next contention of appellant pertains to a comment of the trial court, and it is necessary to set out the factual background leading up to it. Appellant's principal physician was Dr. Arthur Jackson who was a resident of Illinois. On a Tuesday morning during the presentation of appellant's case he testified that he had that morning been told by the doctor's wife that Dr. Jackson was "sick in bed" and could not be in court to testify. Near the close of the trial, respondents placed two investigators on the witness stand. One testified that on Tuesday afternoon he had gone to Dr. Jackson's office and had been examined by the doctor personally and had obtained a prescription signed by him. The second witness testified that he had gone to Dr. Jackson's office on Wednesday and had been examined personally by the doctor and had been given a prescription. Counsel for appellant, Mr. Sherman Landau, then was sworn as a witness for appellant and he testified at length to the steps he had taken to arrange for the attendance of Dr. Jackson. On cross-examination he testified that he did not take the deposition of

Dr. Jackson; that he could have taken it "for any purpose, whether he will or will not be available;" that "Depositions, when properly admissible, are available for reading to the jury, if it is a jury trial;" and that "If I had taken his deposition, I would have offered it to the jury; whether it would have been admitted into the evidence by the court, I can't say." All of this was, of course, in the presence of the jury. During the oral argument by appellant's counsel to the jury, the following occurred:

"Mr. Landau: * * * We have been handicapped in the presentation of this claim by reason of the fact that so many of these people live in Illinois where we can't subpoena them and make them come in, where if they * * *.

"Mr. Elbert: I object to that and move for a mistrial, your Honor. He's got a right to take depositions of all these people.

"Mr. Landau: I think that my statement about the process of the Court is accurate, your Honor.

"The Court: Well, they can't be subpoenaed to come in. Depositions could be taken. The request for a mistrial will be denied.

"Mr. Landau: And we were particularly disappointed that Dr. Jackson didn't come in. He would not have added much, except that he could have given you the same details that Mr. Paige gave you * * *. We would rather have had Dr. Jackson here, and if we had known in time that he was going to be ill, or that for any reason he didn't want to come to this court, we certainly would have taken his deposition had we known in time, but we don't have it, and we are handicapped. We'd like to be able to present that additional information to you if we could."

Appellant's counsel argues that when respondents learned that Dr. Jackson would

not be available as a witness, they "exploited the resulting situation before the jury," and that in an effort to offset the "unjust prejudice" he commented to the jury that compulsory process of the courts of Missouri did not extend to Illinois. He then contends that the statement by the trial court that "depositions could have been taken" was so prejudicial under the circumstances to require a reversal of the judgment and a new trial.

The comment of appellant's counsel that "so many of these people live in Illinois" obviously was not directed to Dr. Jackson alone, but in any event if it was made concerning him, appellant's counsel had personally testified previously that he could have taken his deposition. Therefore, the court did not tell the jury anything that appellant's counsel had not personally told them, and what the court did say was a correct statement of law made in ruling on an objection. McNeill v. Fidelity & Casualty Co. of New York, 336 Mo. 1142, 82 S.W.2d 582. Appellant did not enter an objection to the statement of the trial court if he then considered it to be prejudicial, and he did not ask the court to take any action to purge the now alleged wrongful effect of the statement. Brawley v. Esterly, Mo.Sup., 267 S.W.2d 655. We find no error prejudicial to appellant.

Appellant's last contention is that the trial court erred in overruling his challenge for cause to juror Kulikowski, and in support thereof he quotes three questions and answers on voir dire which does not present a complete picture of the situation. This juror stated that he had in the past worked for the St. Louis Public Service Company as a bus and streetcar operator and had been involved in some accidents but was never called to court. He did not know what the settlements were, "so I don't think it would have any tendency for me to go one way or the other." Mr. Landau then asked: "Do you think you would be inclined to lean a little bit in favor of the carrier as against the individ-

ual operator of the automobile?" The juror replied: "Well, from what my recollection was and everything to these, I don't think I could be justified in giving a verdict, so I think * * *." Mr. Landau then interrupted to state he appreciated the juror's frankness, and Mr. Kulikowski continued: "Because I have worked for them, and I know how these accidents, complications and everything that come in, and I don't think that I could sit here." At this point appellant's counsel asked that Mr. Kulikowski be excused. The following then occurred:

"Mr. Ely: If you sat as a juror in this case and listened to the evidence that is presented here by both sides, and as a member of a jury panel, were instructed that you are to decide the facts in this case according to the instructions of law that are given to you by the Judge, would you be able to return a verdict based on those facts as you decide them to be in this case, without regard to what you may know of the result of either a settlement or a trial in another lawsuit which involved entirely different facts?

"Mr. Kulikowski: I think I could, sir.

"Mr. Ely: So that what you tried to tell us, as I understand it, was that you had some knowledge of results in previous claims or trials; is that right?

"Mr. Kulikowski: That's right, sir.

"Mr. Ely: Now, you understand, do you not, that each trial or claim is entirely different from one another?

"Mr. Kulikowski: That's right.

"Mr. Ely: And do you believe that if you did sit as a juror and listened to the facts, that you could decide fairly, without being prejudiced or influenced for one side or the other?

"Mr. Kulikowski: I think I could, sir.

* * * * * *

"The Court: Mr. Kulikowski, in all lawsuits all any one is entitled to is a fair and impartial trial. Now if you feel that you have any leaning one way or the other in a case of this kind, without the benefit of the knowledge and of the evidence and the law, I want you to so state now. Do you feel that you have such a leaning?

"Mr. Kulikowski: No, I don't, sir.

"The Court: In other words, having worked for a carrier, I want to know whether or not you would be more sympathetic with the carrier's side of a lawsuit than you would with the plaintiff's side, other things being equal?

"Mr. Kulikowski: I don't think I would, sir.

"Mr. Ely: Does the juror say he does not think he could give a fair trial?

"Mr. Kulikowski: I think I could.

"Mr. Ely: I couldn't quite understand what he said.

"The Court: All right. The challenge will be overruled."

 " 'The trial judge is and should be vested with broad discretion in determining the qualifications of veniremen to sit as jurors and his rulings should not be disturbed unless they are clearly and manifestly against the evidence.' " Strahl v. Turner, Mo.Sup., 310 S.W.2d 833, 841. The juror did not admit any prejudice against appellant or to a class of which he was a member. He did not indicate any basis for disqualification after his first answers were explained by subsequent examination. The trial court and not Mr. Kulikowski was the judge of his qualifications as a juror, Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W. 2d 459, and from the record we certainly cannot say that the trial court abused its discretion in overruling appellant's challenge for cause of this juror.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., EAGER, J., and BROADDUS, Special Judge, concur.